**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 23-10731-CGB** |
| **WC PARADISE COVE MARINA, L.P.,** | § | |
| | § | |
| Debtor. | § | **Chapter 11** |

### DEBTOR'S DISCLOSURE STATEMENT UNDER 11 U.S.C. § 1125

**THIS PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION FOR USE IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OF REORGANIZATION DESCRIBED HEREIN. ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS PROPOSED DISCLOSURE STATEMENT ARE NOT INTENDED AND SHOULD NOT IN ANY WAY BE CONSTRUED AS A SOLICITATION OF VOTES ON THE PLAN, NOR SHOULD THE INFORMATION CONTAINED HEREIN BE RELIED UPON FOR ANY PURPOSE BEFORE A CONDITIONAL DETERMINATION BY THE BANKRUPTCY COURT THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION.**

DATED: December 4, 2023.

**HAYWARD PLLC**

*/s/ Ron Satija*
Ron Satija
Bar Number: 24039158
Todd Headden
Bar Number: 24096285
7600 Burnet Rd, Ste. 530
Austin, TX 78757
(737) 881-7102
rsatija@haywardfirm.com
theadden@haywardfirm.com

***COUNSEL FOR DEBTOR***

# TABLE OF CONTENTS

I.      INTRODUCTION........................................................................................................ 5
        A.      Identity of the Debtor........................................................................................ 5
        B.      General Information Concerning Disclosure Statement ................................... 5
        C.      Definitions......................................................................................................... 5
        D.      Answers to Commonly Asked Questions .......................................................... 5

II.     INFORMATION CONCERNING THE DEBTOR...................................................... 8
        A.      Overview of the Debtor ..................................................................................... 8
        B.      Management of the Debtor. ............................................................................... 8
        C.      History of the Debtor Prior to the Bankruptcy.................................................. 8
        D.      Significant Events Since Filing the Bankruptcy. .............................................. 8

III.    FINANCIAL INFORMATION .................................................................................... 9
        A.      Pre-Bankruptcy ................................................................................................. 9
        B.      Post-Bankruptcy................................................................................................ 9

IV.     ANALYSIS AND VALUATION OF PROPERTY........................................................ 9
        A.      Real and Personal Property................................................................................ 9
        B.      Liquidation Value/Analysis .............................................................................. 9

V.      PLAN OF REORGANIZATION .............................................................................. 10
        A.      Overview of the Plan ...................................................................................... 10
        B.      Analysis and Treatment of Claims.................................................................. 10
        C.      Means for Implementation of the Plan............................................................ 12
        D.      Feasibility of the Plan and Risk to Creditors ................................................. 16
        E.      Remedies for Default ...................................................................................... 16
        F.      Claims Allowance Procedure .......................................................................... 17
        G.      Assumption and Rejection of Executory Contracts ........................................ 17
        H.      Effect of Confirmation of Plan ....................................................................... 17
        I.      Retention of Jurisdiction ................................................................................. 18
        J.      Post-Confirmation Procedure.......................................................................... 18

VI.     ALTERNATIVES TO THE DEBTOR'S PLAN ....................................................... 18

VII.    PENDING AND POTENTIAL LITIGATION .......................................................... 19
        A.      Pending Litigation........................................................................................... 19
        B.      Avoidance Actions .......................................................................................... 19
        C.      Preservation of Claims.................................................................................... 20
VIII.   INCOME TAX CONSEQUENCES .......................................................................... 20
        A. Introduction ....................................................................................................... 20
        B. Certain Definitions ............................................................................................ 21
        C. Certain Material Federal Income Tax Consequences ....................................... 21
        D. Importance of Obtaining Professional Tax Assistance ..................................... 22

IX.     NOTICE OF PLAN OF REORGANIZATION ............................................................... 23

### IMPORTANT NOTICE AND DISCLAIMER

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT WAS PREPARED TO PROVIDE HOLDERS OF CLAIMS AGAINST THE DEBTORS WITH "ADEQUATE INFORMATION" (AS DEFINED IN THE BANKRUPTCY CODE) SO THAT THEY CAN MAKE AN INFORMED JUDGMENT ABOUT THE PLAN. THIS DISCLOSURE STATEMENT AND ALL EXHIBITS HERETO, INCLUDING THE PLAN, SHOULD BE READ. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE DISCLOSURE STATEMENT AND THE PLAN.**

**THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN. THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.**

**NOTHING STATED HEREIN WILL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.**

**THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.**

**HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT OR THE PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND**

TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THIS DISCLOSURE STATEMENT OR THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

NO SOLICITATION OF VOTES HAS BEEN OR MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND 11 U.S.C. § 1125 AND NO PERSON HAS BEEN AUTHORIZED TO USE ANY INFORMATION CONCERNING THE DEBTOR TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. CREDITORS SHOULD NOT RELY ON ANY INFORMATION RELATING TO THE DEBTORS OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR SUBMITTED HEREWITH.

EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATION CONCERNING THE DEBTORS, ITS ASSETS, PAST OR FUTURE OPERATIONS, OR CONCERNING THE PLAN IS AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTORS.

NEITHER DELIVERY OF THE DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THE DISCLOSURE STATEMENT AND THE PLAN SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE THE DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED.

THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR THE COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT AND THE PLAN ATTACHED HERETO SHOULD BE READ IN THEIR ENTIRETY PRIOR TO VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY WITH THIS DISCLOSURE STATEMENT.

# I.     __INTRODUCTION__

## A. Identity of the Debtor

**WC Paradise Cove Marina, LP** (the "Debtor"), is a Texas Limited Partnership and filed a petition for reorganization under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. ("Code") on September 4, 2023, in the United States Bankruptcy Court for the Western District of Texas, Austin Division ("Bankruptcy Court").

The Debtor operates as a debtor-in-possession pursuant to 11 U.S.C. § 1107 and 1108.

## B. General Information Concerning Disclosure Statement

The Debtor has prepared and filed this Disclosure Statement ("Disclosure Statement") consistent with the provisions of the Bankruptcy Code. The purpose of the Plan is to provide full recovery to the Creditors. The Debtor believes that the Plan achieves full recovery to all Creditors while facilitating the reorganization of the Debtor.

The Debtor submits this Disclosure Statement pursuant to 11 U.S.C. § 1125 and Rules 3016 and 3017 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") to all Creditors of the Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for creditors and the members of the Debtor in order to arrive at an intelligent, reasonably, informed decision in exercising the right to object to the Debtor's Plan of Reorganization, incorporated herein ("Plan").

This Disclosure Statement describes the reorganization of the Debtor including the specific treatment you, as a Creditor, will receive under the Plan. The disclosure of information contained here is submitted as an aid and supplement to your review of the Plan in an effort to explain the terms and implications of the Plan. If any questions arise, the Debtor urges you to contact the Debtor's counsel and every effort will be made to address your questions. You are, of course, also urged to consult with your own counsel.

## C. Definitions

Capitalized terms used herein are defined herein and in the DEFINITIONS in Article I of the Plan. If not defined, capitalized terms have the meanings assigned to in the Bankruptcy Code and Bankruptcy Rules.

## D. Answers to Commonly Asked Questions

As part of the Debtor's effort to inform Creditors regarding the Debtor's Plan and the Plan confirmation process, the following summary provides answers to various questions which are often asked by a party receiving a disclosure statement.

**THE FOLLOWING SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY.**

## 1.     WHO IS THE DEBTOR?

WC Paradise Cove Marina, LP

2.      **HOW LONG HAS THE DEBTOR BEEN IN CHAPTER 11?**

The Debtor filed its bankruptcy case on September 4, 2023.

3.      **HAS THIS DEBTOR BEEN IN BANKRUPTCY BEFORE?**

No.

4.      **WHAT IS CHAPTER 11?**

Chapter 11 is the business reorganization provision of the Bankruptcy Code. It permits a debtor to submit a plan of reorganization providing for the sale, distribution or retention of its assets to be used for the repayment of its debts on terms it believes to be manageable.

5.      **WHAT IS THE DEBTOR ATTEMPTING TO DO IN CHAPTER 11?**

The principal objective of a Chapter 11 case is confirmation (approval) of a plan of reorganization that enables a financially distressed debtor to restructure its debts and its assets. A plan of reorganization sets forth the means for treating impaired and unimpaired claims against a debtor. A claim is impaired under a plan of reorganization if the plan provides that such claim will not be repaid in full or that the legal, equitable, or contractual rights of the holder of such claim will be altered. A claim is unimpaired if it will be paid in full or the legal, equitable, or contractual rights of the holder of such claim are not altered by the plan of reorganization. A holder of an impaired claim generally is entitled to vote on a plan of reorganization if such claim has been allowed under Section 502 of the Bankruptcy Code.

6.      **IF THE PLAN OF REORGANIZATION GOVERNS HOW MY CLAIM IS TREATED, WHY AM I RECEIVING THIS DISCLOSURE STATEMENT?**

The Bankruptcy Code requires that a debtor solicit acceptances and rejections of its proposed plan before the plan can be confirmed (approved) by the Bankruptcy Court. Before a debtor can solicit acceptances of its plan, the Bankruptcy Court must approve the disclosure statement and determine that the disclosure statement contains information adequate to allow creditors to make informed judgments about the plan. After Bankruptcy Court approval of the disclosure statement, then the disclosure statement, the proposed plan and a ballot are sent to the holders of claims. The creditors then have the opportunity to vote on the plan. Creditors should review the Plan carefully and consult with counsel if they have any questions regarding their treatment.

7.      **HAS THIS DISCLOSURE STATEMENT BEEN APPROVED BY THE COURT?**

The Court has not approved this Disclosure Statement or any other yet. Before a Plan of Reorganization can be confirmed, the Bankruptcy Court must find that a debtor's Disclosure Statement contains information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition for the debtor's books and records to enable a hypothetical, reasonable investor typical of holders of claims of the relevant classes to make an informed judgment whether to vote to

accept or reject the plan. The Bankruptcy Court's approval of the Disclosure Statement in this case does not constitute an endorsement of any of the information contained in either the Disclosure Statement or the Plan.

Likewise, although the Debtor has utilized information believed to be accurate in preparing this Disclosure Statement, neither the Debtor nor its counsel warrant the accuracy of the information contained in or relied upon in preparing this Disclosure Statement nor should the Disclosure Statement be construed to be any representation or warranty whatsoever, express, implied or otherwise, that the Plan is free from risk, that acceptance or confirmation of the Plan will result in a risk-free or assured restructuring of the debts of the Debtor, or that the projections or plans of the Debtor for payment will be realized.

## 8.  WHY IS CONFIRMATION OF THE PLAN OF REORGANIZATION IMPORTANT?

Confirmation (approval) of the Plan by the Bankruptcy Court is necessary for the Debtor to provide the proposed payment to Creditors under the Plan. Unless the Plan is confirmed by the Bankruptcy Court, the Debtor is legally prohibited from paying you what has been proposed in the Plan.

## 9.  WHAT IS NECESSARY TO CONFIRM THE PLAN OF REORGANIZATION?

At the hearing scheduled by the Bankruptcy Court for _____, 2024, at _____ (Central time), in the U.S. Bankruptcy Court, Courtroom #2, 903 San Jacinto Blvd., Texas 78701, the Bankruptcy Court will consider whether the Plan of Reorganization should be confirmed. Section 1129 of the Bankruptcy Code contains the requirements for confirmation of a Plan of Reorganization.

## 10.  ARE CREDITORS ENTITLED TO VOTE ON THE PLAN?

Impaired creditors are entitled to vote on the Debtor's proposed Plan. In this case, the holders of Claims and Interests in Classes 1 – 4 are Impaired and are entitled to vote to accept or reject the Plan.

## 11.  HOW WILL THIS PLAN TREAT MY CLAIM?

Entities and individuals who are owed money by a debtor hold what is known as a "claim." The Plan organizes claims into classes based upon the type of claim and the treatment which it will receive under the Plan. In order to determine how the Plan treats your claim, you must first determine which class covers your claim. To find the treatment of your claim, look in the Table of Contents to find the category which best describes your claim. Many creditors will hold what are known as unsecured claims.

## II.    INFORMATION CONCERNING THE DEBTOR

### A.    Overview of the Debtor

The Debtor is a Texas limited partnership and owns three parcels of real property located at 17141 Rocky Ridge Rd, Austin, TX 78734. The properties total 258.545 acres and include floating docks as well as other personal property.

### B.    Management of the Debtor.

The general partner of the Debtor is WC Paradise Cove GP, LLC, and the Manager of the general partner is Mr. Natin Paul.

### C.    History of the Debtor Prior to the Bankruptcy.

The Debtor was formed on March 4, 2009 in order to purchase the Property.

Apart from owning and leasing the property, there are no other operations of the Debtor. Debtor does not currently have any employees. There are a number of tenants paying monthly rent for 146 occupied slips.

Debtor believes the property to be worth significantly more than all debts based upon the Manager's knowledge and experience in the Central Texas real estate market. The Debtor entered into a loan with Northwest Federal Credit Union in 2015. The initial amount of the loan was for $3,200,000. The loan was subsequently purchased by AC VIP PC Marina Debt, LLC ("Noteholder"), on or about February 25, 2022, and Debtor has scheduled the current outstanding balance at approximately $4,350,000. There are other secured and unsecured claims as indicated in the Debtor's schedules and statements filed with the court, as well as the claims analysis filed as an Exhibit to the Plan.

Prior to filing the bankruptcy, the Debtor's operations and that of its ownership and affiliates were affected by the Covid-19 pandemic and other financial setbacks. Debtor engaged in negotiations with both Northwest Federal Credit Union, and then with Noteholder, but negotiations were not successful. Due to the foregoing, Debtor was forced to file Bankruptcy to protect the substantial equity in the property.

### D.    Significant Events Since Filing the Bankruptcy.

Debtor filed the bankruptcy on September 4, 2023, with Hayward PLLC as counsel.

Noteholder filed its Motion for Relief from Stay on September 7, 2023. The primary issue was whether Debtor carried sufficient insurance to protect the interest of Noteholder and other parties in interest. The Motion was subsequently set for hearing on October 5, October 20, and then October 27, 2023, for hearing. The stay was lifted on November 2, 2023, and then reinstated on December 1, 2023, by agreement with Noteholder, upon showing that Debtor had procured sufficient insurance.

Debtor filed its bankruptcy schedules, Statement of Financial Affairs ("SOFA"), List of Equity Security Holders, and amended list of creditors on September 19, 2023, and subsequently amended the schedules and SOFA on November 1, 2023.

Debtor has further filed Monthly Operating Reports for the months of September and October, which are attached to this Disclosure Statement. The report for November is due on December 21, 2023, and can be provided upon request.

## III.  FINANCIAL INFORMATION

The financial information contained herein has been prepared by the Debtor's management team with the assistance of its attorneys.

### A.  Pre-Bankruptcy

Debtor's Bankruptcy Schedules (which were filed with the Bankruptcy Court on September 19, 2023, and subsequently amended on November 1, 2023, and are available for review by interested parties) reflected assets of approximately $114,767 (with the marina valued at an unknown value) and liabilities of approximately $4,235,905.81. However, as indicated below, the Debtor believes there is significant equity in the property.

### B.  Post-Bankruptcy

The Debtor has filed Monthly Operating Reports for the months of September and October, which are attached to this Disclosure Statement. The report for November is due on December 21, 2023, and can be provided upon request. The Debtor has also projected its financial performance for the period covered by the Plan and has attached these projections to this Disclosure Statement.

## IV.  ANALYSIS AND VALUATION OF PROPERTY

### A.  Real and Personal Property

The real property owned by Debtor as of the Petition Date consists of 258.545 acres located on Lake Travis in Austin, Texas, of which 246.815 acres is designated by the Travis Central Appraisal District (CAD) as being considered underwater. The Travis CAD valuation of the land is $1,795,112. Debtor's estimate of value is significantly higher, and Debtor is seeking to employ a broker who will provide additional information regarding valuation.

The Debtor's personal property consists of assets valued at $114,767 per the schedules with the docks valued at an unknown value.

### B.  Liquidation Value/Analysis

One of the requirements to confirm a plan of reorganization is that creditors receive at least as much as they would under a liquidation of the debtor under chapter 7 of the Bankruptcy Code. It is intended to compare the payments under the Debtor's proposed Plan to payment under a chapter 7 liquidation.

The Debtor has designated this case as a "single asset real estate" case, as defined by 11 U.S.C. § 101(51)(B), as "real property constituting a single property or project which generates substantially all of the gross income of a debtor." Pursuant to 11 U.S.C. § 362(d)(3), once the Court makes a determination regarding the qualification of the Debtor for the single asset rules, the automatic stay imposed on Noteholder by the commencement of Debtor's case would terminate unless Debtor files a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time or the Debtor commences making interest payments to Noteholder at the non-default contract rate of interest. The Debtor has timely filed a Plan of Reorganization which intends to pay all creditors in full.

In the absence of a confirmed Plan, Noteholder would likely be allowed to obtain relief from the automatic stay to foreclose its liens on the Debtor's real property. Alternatives to the plan are discussed in Section VI below.

Debtors' have not yet retained an appraiser to conduct a forced sale liquidation analysis. If Noteholder were to foreclose on the property, the Debtor believes it is likely that Noteholder would bid up to the amount of its outstanding debt, estimated at approximately $4,350,000. There would be no marketing effort in connection with a foreclosure sale and any other buyer at a foreclosure sale would have to outbid Noteholder and pay cash on the date of the foreclosure. Any such purchaser would not have the ability to conduct due diligence to determine the feasibility of its intended use and could not get a title policy, further depressing the potential sales price.

The Debtors do not believe there would be any distribution to holders of unsecured claims if Noteholder were to sell the Debtors' real property at a foreclosure sale. Regardless of the foreclosure analysis, the Plan proposes to pay the creditors in full subject to the resolution of any litigation or claim objections. Therefore, the Creditors will receive as much in this bankruptcy as they would be able to recover under a chapter 7 bankruptcy.

## V.     PLAN OF REORGANIZATION

### A. Overview of the Plan

Under the Plan, Debtor will continue to manage and operate the Property and will make payments on secured and unsecured debt prior to paying off all debts via sale or refinance, which is projected to occur within approximately one year after the Effective Date of the Plan.

### B. Analysis and Treatment of Claims

**Administrative Expense Claims including Professional Fee Claims**

Administrative claims consist of expenses incurred during the chapter 11 case, which are approved by the Bankruptcy Court and expenses incurred in operating the Debtor's business. Most administrative expense claims consist of claims by professionals employed by the Debtor in the bankruptcy case, which must be approved by the Bankruptcy Court. Other administrative claims are claims arising post-petition which may have not been paid. The Debtor has paid and intends to

continue to pay normal post-petition operating expenses as they become due in the ordinary course of business. The Debtor is aware of the following Administrative Claims:

| | |
|---|---|
| Hayward PLLC: | Estimated to be $80,000 |
| United States Trustee: | $840 |

No Administrative Expense Claims (other than U.S. Trustee fees pursuant to 28 U.S.C. § 1930) shall be allowed except pursuant to Court order. Any application for allowance of an administrative expense claim shall be filed within 30 days after the Effective Date or shall be barred.

Under the proposed Plan, unless otherwise agreed, each holder of an Administrative Claim shall be paid in full on the Effective Date of the Plan or on the date that within five days following the date that a final order is entered approving the Administrative Expense Claim. To the extent that the cash of the Reorganized Debtor is not sufficient to pay allowed claims in this class, the Reorganized Debtor's principal will contribute an amount to the Reorganized Debtor sufficient to make such payment to this class.

**Priority Tax Claims**

Priority Tax Claims are not required to be classified and shall be paid in full in equal monthly installments of principal and interest, commencing on the first day of the first month following the Effective Date and continuing on the first day of each succeeding month until the expiration of 60 months from the Petition Date.  Interest shall begin to accrue as of the Petition Date and will paid at the rate of 12% per annum. The only claim asserting priority status is that of the IRS, but the claim gives no detail as to how it qualifies for priority, and the Debtor plans to review the claim with the IRS and object if needed.

**Security Deposit Claims**.  Any tenant of the Debtor for whom the Debtor holds a security deposit shall be refunded the security deposit at the time and on the terms set out in the Debtor's pre-petition agreements with said tenant.

**Summary of Classification**.  In accordance with section 1123(a)(1) of the Bankruptcy Code, all required Claims and Equity Interests are placed in the Classes described below for all purposes, including voting on (if impaired), confirmation of, and distributions under, this Plan as follows:

| Class No. | Class Description | Status | Voting Rights |
|-----------|-------------------|--------|---------------|
| Class 1 | Allowed Secured Claim of Travis County | Impaired | Entitled to Vote |
| Class 2 | Allowed Secured Claim of Creditor Caz Creek TX, LLC | Impaired | Entitled to Vote |
| Class 3 | Allowed Secured Claims of AC VIP PC Marina Debt, LLC ("Noteholder") | Impaired | Entitled to Vote |
| Class 4 | Allowed Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Allowed Equity Interests | Unimpaired | Not Entitled to Vote |

**Designation of Unimpaired and Impaired Classes**. Classes 1, 2, 3, and 4 are Impaired and entitled to vote.

**Acceptance of the Plan**. An Impaired Class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims or such Class that have accepted or rejected the Plan. Any Impaired Class of Creditors in which no member votes to accept or reject the Plan will be deemed to have accepted the Plan. The votes of Insiders to accept the Plan do not count in determining whether the Plan has been accepted by at least one class of Impaired Claims, a requirement under the Bankruptcy Code for Confirmation of the Plan.

**Nonconsensual Confirmation**. In the event any Impaired Class fails to accept the Plan, in accordance with section 1129(a) of the Bankruptcy Code, the Debtor, as the Plan proponent, reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

<u>**Classification and Treatment of Claims and Equity Interests**</u>.

**Class 1 – Allowed Secured Claim of Travis County**

The allowed secured claim of Travis County shall be paid in accordance with 11 U.S.C. § 1129(a)(9)(c). The Debtor, in its sole discretion, will either pay such Claims: (i) on the Effective Date; (ii) when such taxes become due and payable under the laws of the applicable taxing jurisdiction; or (iii) with quarterly deferred cash payments including applicable interest over a period not exceeding one year from the Effective Date, equal to the Allowed Claim.

All Tax Claims shall remain subject to section 505 of the Bankruptcy Code. The Reorganized Debtor shall retain the right to a determination of the amount or legality of any tax pursuant to section 505 of the Bankruptcy Code as to any Tax Claim. The Reorganized Debtor

may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any Tax Claim.

With respect to Allowed Secured Tax Claims, the interest rate paid upon such Claims shall be the rate of interest determined under applicable non-bankruptcy law.

Post-petition property taxes will be paid when such taxes become due and payable under the laws of the applicable taxing jurisdiction.

Nothing herein shall prohibit the Debtor or the Reorganized Debtor from selling the Property at any time provided that the remaining unpaid portion of the Allowed Secured Claim of a Taxing Authority holding an interest in the Property shall be paid in full at such time.

Claims in Class 1 are impaired by the Plan.

## Class 2 – Secured Claim of Caz Creek Holdings 2, LLC.

The Allowed Secured Claim of Caz Creek shall be Allowed in the amount of $ $77,396. The Allowed Secured Claim of Caz Creek shall be paid through monthly over 120 consecutive payments along with interest at a rate of 8% per annum.

The first monthly payment will be due and payable on the first Business Day of the first month after the Effective Date and on the first Business Day of each respective month thereafter. To the extent that the Debtor misses any payment due to Caz Creek on account of its Allowed Secured Claim as provided herein, Caz Creek shall send written notice of such missed payment to Debtor and its counsel, and the Debtor shall have ten (10) business days from the date of its receipt of such notice to make such missed payment before a default may be deemed to have occurred hereunder.

Any perfected liens or security interests securing Caz Creek's Allowed Secured Claim will be preserved and continued. Caz Creek shall, upon payment and satisfaction of its Allowed Secured Claim in full as provided herein, execute releases of any remaining encumbrances upon the Property in a form satisfactory to the Reorganized Debtor and deliver same to the Reorganized Debtor or its designee.

The written agreements by and between Caz Creek and the Debtor will remain the same, except to the extent that the terms therein are modified by this Plan, and such agreements will be deemed to be modified to comport with this Plan.

All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be deemed cured and waived, and all amounts owed will be deaccelerated and paid in accordance with the terms of this Plan. Except as provided by this Plan, no default interest, late charges, or other penalties arising or accruing after the Petition Date shall be required to be paid to Caz Creek, provided, however, that Caz Creek shall be entitled to charge, collect, and receive late charges and other amounts provided by the written agreements between the Debtor and Caz

Creek in the event of the Debtor's failure to timely make a payment to Caz Creek on its Allowed Secured Claim under this Plan after Confirmation.

Nothing herein shall prohibit the Reorganized Debtor from refinancing, selling, or otherwise disposing of the Property at any time, provided that the remaining unpaid portion of Caz Creek's Allowed Secured Claim shall be paid in full at such time. No prepayment penalty will be due with respect to any prepayment of Caz Creek's Allowed Secured Claim.

Class 2 Claims are Impaired by the Plan.

## Class 3 – Allowed Secured Claims of Noteholder

AC's Allowed Secured Claim[1] shall be paid at the election of the Debtor pursuant to one or more of the scenarios set forth below. The Debtor reserves the right to escrow proceeds to the extent there is any dispute as to AC's Secured Claim. The scenarios include, (a) cash proceeds from leasing, (b) cash proceeds from Refinance, or (c) cash proceeds from a sale.

### a. Cash From Proceeds of Leasing

Beginning on the 1st day of the first month after the Effective Date, Debtor will pay to AC monthly payments in the amount of $17,047.05, which is equivalent to the last designated monthly contract rate prior to the petition date or such other amount as is determined by the Court. All remaining principal, interest, and costs will be due and payable on March 1, 2025, or such other date as determined by the Court.

### b. Cash from Proceeds of Refinancing or Sale

The Secured Claim of AC will be paid from cash proceeds from the Refinancing or sale of all or a portion of the Property.

Debtor may, consistent with section 1123(a)(5)(D) of the Bankruptcy Code, market and sell any or all of the Property. In the event of such a sale, AC will receive the net proceeds from the sale of all or a portion of the Property after payment of customary closing costs (including broker's fees, title insurance fees, and other typical closing costs and taxes attributable to the Property) to be applied as determined by the Court until satisfied in full.

Reorganized Debtor shall be entitled to close the sale of the Property and AC shall be required to release its lien provided that the sale provides either for the payment of the portion of AC's (a) allowed claim in full, or (b) if AC's claim is not Allowed, then the payment of the undisputed portion of AC's claim in full, with additional proceeds sufficient to pay any disputed portion of AC's claim to be held in the registry of the Bankruptcy Court, in agreed-upon escrow account, or as otherwise ordered by the Bankruptcy Court. To the extent a Noteholder Action is

---

[1] The Debtor reserves the right to contest the amount asserted by Noteholder and the extent, priority and validity of its liens, and to assert causes of action for damages.

pending, the Bankruptcy Court shall determine how much of the sale or refinance proceeds will be held in escrow until the resolution by final order or judgment in the Noteholder Action.

In the event of a default under these provisions, if such default is not cured within ten (10) business days of receipt of written notice, AC shall be entitled to pursue its available remedies under its Pre-Petition Date agreements with the Debtor. AC may be paid in whole or in part at any time without penalty from the proceeds of the Sale or from any Refinancing obtained by or on behalf of the Debtor or the Reorganized Debtor. Notwithstanding same, the Reorganized Debtor reserves all rights to contest the validity of any such default declared by AC and the Bankruptcy Court shall retain jurisdiction to hear such disputes.

Notwithstanding any other provision in the Plan, the Debtors may seek, and the Court may, in its discretion, grant an extension of any Payment deadline, upon a showing of cause, including a force majeure or delays in the approval or permitting process by governmental authorities, notwithstanding the exercise of best efforts by the Debtor and the Buyer to timely close the sale.

### c.  Provisions Applicable to Foregoing

To the extent of any dispute regarding AC's Allowed Claim, such dispute may be adjudicated and determined in a Court of competent jurisdiction in Travis County, Texas, including the Bankruptcy Court.

This Claimant shall retain all valid Liens until its Allowed Claims are paid in full.

This Class is Impaired.

### Class 4 – Allowed Unsecured Claims.

Class 4 consists of all Unsecured Claims that are not Insider Claims.

Each Allowed Unsecured Claim shall be paid in full within one year after the effective date at 8.5% interest, with payments to be made at the discretion of the debtor, and in no case any later than March 1, 2025.

This Class is Impaired

### Class 5 – Equity Interests.

Each holder of an Equity Interest shall retain such interests but shall not receive any distribution on account of such interests until Classes 1, 2, 3 and 4 Allowed Claims are paid in full.

This Class is Unimpaired and holders of Claims in this Class are not entitled to accept or reject the Plan.

### C.  Means for Implementation of the Plan

The plan will be implemented via the means indicated in Article V of the plan, including payments made from income of the Debtor in excess of that needed for payment of its monthly

operating expenses, taxes, and other required expenditures. Additional funds will come from the sale or refinance of the property. Sale will be effectuated by a broker to be hired by the Debtor. Discussions are currently underway with broker candidates. If the Debtor pursues refinance, the financing will likely come from a Debtor affiliate.

### D. Feasibility of the Plan and Risk to Creditors

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court in accordance with the Bankruptcy Code, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Moreover, there can be no assurance that modifications to the Plan will not be required for confirmation or that such modifications will not necessitate the re-solicitation of votes.

**Further, the Debtor will be submitting financial projections for the Reorganized Debtor based on certain assumptions. The projections and the feasibility analysis have not been compiled, audited, or examined by independent accountants and the Debtor makes no representations or warranties regarding the accuracy of the projections or the feasibility analysis or the ability to achieve forecasted results. Many of the assumptions underlying the projections and the feasibility analysis are subject to significant uncertainties and are beyond the control of the Debtor, including, but not limited to, revenue and expenses, the market demand for this kind of asset, the financial condition of Debtor's affiliates, and other market and economic conditions. Inevitably, some assumptions will not materialize, and unanticipated events and circumstances may affect the ultimate financial results. Projections and feasibility analyses are inherently subject to substantial and numerous uncertainties and to a wide variety of significant business, economic and competitive risks, and the assumptions underlying the projections and the feasibility analysis may be inaccurate in any material respect. Therefore, the actual results achieved, the capital structure, and the recapitalization process, among other things, may vary significantly from the forecasts, and the variations may be material.**

### E. Remedies for Default

In the event of default by the Reorganized Debtors under the Plan, creditors may exercise any rights granted to them under documents executed in connection with the Plan or any rights available to creditors under applicable non-bankruptcy law. Notwithstanding any other provision, any creditor alleging a default must give the Reorganized Debtors 30 days' notice and an opportunity to cure before exercising any rights available upon default.

In the event of a default by a creditor, the Debtors may enforce the Plan as a contract in a court of competent jurisdiction. The Reorganized Debtors may escrow payments to any creditor which defaults under the Plan until the default is cured. The Reorganized Debtors shall give the creditor 30 days' notice and an opportunity to cure before exercising this provision.

Conversion to chapter 7 is available as a remedy for default in the event that the Reorganized Debtors fail to substantially consummate the Plan. However, once substantial consummation occurs, conversion to chapter 7 is no longer available as a remedy for default. When the Plan is confirmed and is substantially consummated, the assets of the Debtors will revest in the Reorganized Debtors subject only to the liens and claims provided for under the Plan. In the event

that the Debtors' case was converted to one under chapter 7 after consummation of the Plan, these assets would not revest in the bankruptcy estate.

### F. Claims Allowance Procedure

Except for United States Trustee fees due under 28 U.S.C. § 1930, no Administrative Expense Claims shall be allowed except pursuant to Court Order. Any application for allowance of an Administrative Expense Claim shall be filed within 30 days after the Effective Date or shall be barred. Any claims for reimbursement of fees and expenses pursuant to 11 U.S.C. § 506(b) shall be filed within 30 days after the Effective Date or shall be barred.

Any claims for rejection of an executory contract or unexpired lease shall be filed within 30 days after the Effective Date or the date set forth in the order rejecting the lease or contract, whichever is less. Cure claims on assumed executory contracts and unexpired leases shall be filed within 30 days after the Effective Date if they differ from the amount set forth by the Debtors herein or shall be barred.

The Debtors or Reorganized Debtors may file an objection to a claim on or before the later of 60 days from the Effective Date under the Plan or 30 days after such claim is filed.

### G. Assumption and Rejection of Executory Contracts

On the Effective Date, except as otherwise provided in the Plan, any unexpired lease or executory contract that has not been previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court shall be deemed assumed by the Debtor under sections 365(a) and 1123 of the Bankruptcy Code. Debtor will file a list of contracts to be rejected prior to date of the Confirmation Hearing. Entry of the Confirmation Order shall constitute approval of such assumptions or rejections, as the case may be, (as such lists may be amended, supplemented or modified on or before the Confirmation Date), pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume executory contracts and unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

### H. Effect of Confirmation of Plan

#### 1. Injunction

Except as specifically set forth in the Plan, from and after the Confirmation Date, all holders of Claims against and Equity Interests in the Debtor are permanently restrained and enjoined (i) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim or Equity Interests against the Debtor or the Estate, (ii) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor or the Estate, (iii) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Estate, (iv) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (v) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a Disputed Claim or Disputed Equity Interest may continue to prosecute its proof of Claim or Equity Interest in the

Bankruptcy Court and all holders of Allowed Claims and Equity Interests shall be entitled to enforce their rights under the Plan.

**2. Discharge**

Except as otherwise provided in the Plan, the rights afforded in the Plan and the payments and distributions to be made thereunder are in complete exchange for, and in full satisfaction and release of, all existing Claims, debts and obligations of any kind, nature or description whatsoever of or against the Debtor or any of its assets or property to the fullest extent permitted pursuant to section 1141 of the Bankruptcy Code. Upon the Effective Date, and except as otherwise provided in the Plan, all existing Claims against the Debtor and the Reorganized Debtor shall be and shall be deemed to be discharged. Subject to the provisions of the Plan, all holders of Claims or Equity Interests shall be precluded from asserting against the Debtor, or any of its assets or property, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of Claim or proof of Equity Interest. Subject to the provisions of the Plan, upon the Effective Date, the Debtor shall be deemed discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim or Equity Interest based upon such obligation is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such debt is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the holder of a Claim or Equity Interest based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and the Reorganized Debtor. In accordance with sections 524 and 1141 of the Bankruptcy Code, the discharge provided for hereunder shall void any judgment against the Debtor to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against the Debtor or its Property to the extent it relates to a discharged Claim.

**I.  Retention of Jurisdiction**

After confirmation of the Plan, the Bankruptcy Court will retain jurisdiction to the extent provided by 28 U.S.C. §1334. Basically, this means that the Bankruptcy Court will retain jurisdiction over matters relating to the Plan and to rule on any matters which are pending in the case.

**J.  Post-Confirmation Procedure**

After confirmation of the Plan, the Bankruptcy Court will rule upon any objections to claims and applications for compensation of professionals. Once the Bankruptcy Court has ruled upon these matters, the Debtors will file an application for final decree. The Debtor will be required to pay U.S. Trustee fees and file quarterly post-confirmation reports until such time as a final decree is entered and the case is closed.

## VI.  ALTERNATIVES TO THE DEBTOR'S PLAN

The Debtor believes that the Plan affords the holders of Claims the potential for the greatest realization on the Debtor's assets and, therefore, is in the best interests of such holders. If the Plan is not confirmed, however, the theoretical alternatives include: (a) an alternative plan of reorganization; or (b) liquidation of the Debtor under chapter 7 of the Bankruptcy Code; or (c) dismissal of this Chapter 11 Case. If the Plan is not confirmed, the Debtor or any other party in interest in the case could attempt to formulate and propose a different plan. Other parties may propose alternative plans, but the Debtor does not believe that any other plan will provide a greater recovery for the Creditors than proposed by Debtor's Plan, or that any such plans will be feasible. Based upon debtor's assessment, unsecured creditors would receive no distributions in a chapter 7 Case or in the event of dismissal of the case. The likely outcome in the case of conversion or dismissal is the foreclosure of the Real Property by Noteholder. If the Lender were to foreclose on the property, it is likely that Noteholder would bid up to the amount of its outstanding debt which was approximately $4 million as of August 1, 2023, and is currently estimated at $4,350,000. Debtors would not expect there to be a robust marketing effort. Any potential buyer at a foreclosure sale would have to outbid Noteholder and pay cash on the date of the foreclosure. Any such purchaser would not have the ability to conduct due diligence to determine the feasibility of its intended use and could not get a title policy, further potentially depressing the potential sales price.

## VII.    PENDING AND POTENTIAL LITIGATION

### A.  Pending Litigation

The Debtor is aware of the following pending litigation matters: D-1-GN-22-000888 *Ball v. WC Paradise Cove Marina LP*, in the 200th District Court of Travis County, Texas; D-1-GN-23-001917 *Andrews v. WC Paradise Cove Marina, LP*, in the 200th District Court of Travis County, Texas; D-1-GN-23-006929, *Timothy Hickey v. Lake Travis Yacht Rentals, LLC*, et al., in the 353rd District Court of Travis County, Texas.

### B.  Avoidance Actions

There are several types of "avoidance actions" established by the Bankruptcy Code for the benefit of debtors, including: actions to recover avoidable preferences under §547 of the Bankruptcy Code; actions to recover fraudulent conveyances under §§ 544 and 548 of the Bankruptcy Code, actions to recover unauthorized post-petition transfers under §549 of the Bankruptcy Code, and actions to invalidate and avoid liens under §§ 544 and/or 545 of the Bankruptcy Code.

Included in the Statement of Financial Affairs on file with the Bankruptcy Court and available for review by interested parties is a disclosure of payments and transfers made to creditors by the Debtors within 90 days of the bankruptcy filing as well as other required disclosures. At the present time, the Debtors do not intend to pursue any preference or fraudulent conveyance actions as the Plan proposes to pay all creditors in full. However, the Debtors (prior to the Effective Date) and Reorganized Debtors (after the Effective Date) reserve the right to pursue any and all causes of action arising under the Bankruptcy Code and applicable law against any persons, and the Plan preserves such rights.

### C. Preservation of Claims

The net proceeds, if any, from potential claims of the Debtors are speculative and uncertain and therefore no value has been assigned to any recoveries. Furthermore, it should not be assumed that because any existing or potential litigation claim has not yet been pursued or may not fall within the list above that any such claim has been waived. While the Debtor has attempted to identify claims which may be pursued, its investigation is ongoing and the failure to list any potential or existing claim generally or specifically is not intended to limit the rights of the Debtors or Reorganized Debtors to pursue any such action. Unless a claim against any person or entity is expressly waived, relinquished, released, compromised or settled as provided or identified in the Plan or any Confirmation Order, the Debtors and the Reorganized Debtors expressly reserve all claims for later adjudication. Therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such claim upon or after the confirmation or consummation of the Plan.

All claims of any kind or character whatsoever owed to the Debtors by third parties or against third parties in favor of the Debtors or the Debtors' estate to the extent not specifically compromised and released pursuant to the Plan, will be preserved and retained by the Reorganized Debtors for and against third parties, whether currently known or unknown. Only those claims specifically and expressly compromised and released pursuant to the Plan are excepted from the foregoing.

## VIII.   INCOME TAX CONSEQUENCES

TO ENSURE COMPLIANCE WITH U.S. TREASURY DEPARTMENT CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF UNITED STATES FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, BY HOLDERS OF CLAIMS OR INTERESTS OR ANY OTHER PERSONS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS OF CLAIMS OR ANY OTHER PERSONS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF U.S. TREASURY DEPARTMENT CIRCULAR 230) OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.

### A. Introduction

The following discussion summarizes certain material U.S. federal income tax consequences of the Plan to the Debtor and holders of Claims and Interests. The summary is provided for general informational purposes only and is based on the United States Internal Revenue Code of 1986, as amended (the "Tax Code"), the treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof (except as otherwise noted below with regard to the American Recovery and Reinvestment Act of 2009), and all of which are subject to change, possibly with retroactive effect.

Changes in any of these authorities or in their interpretation could cause the United States federal income tax consequences of the Plan to differ materially from the consequences described below. The United States federal income tax consequences of the Plan are complex and in important respects uncertain. No ruling has been requested from the Internal Revenue Service (the "Service"); no opinion has been requested from Debtors' or The Debtor's counsel concerning any tax consequence of the Plan; and no tax opinion is given by this Disclosure Statement. The following discussion does not address all aspects of federal income taxation that may be relevant to a particular holder of a Claim or Interest in light of its particular facts and circumstances or to particular types of holders of Claims subject to special treatment under the Tax Code. For example, the discussion does not address issues of concern to broker-dealers or other dealers in securities, or foreign (non-U.S.) persons, nor does it address any aspects of state, local, or foreign (non-U.S.) taxation, or the taxation of holders of Interests in a Debtor. In addition, a substantial amount of time may elapse between the Confirmation Date and the receipt of a final distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, court decisions or administrative changes, could affect the federal income tax consequences of the Plan and the transactions contemplated hereunder.

THE DISCUSSION THAT FOLLOWS IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND PROFESSIONAL TAX ADVICE BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH ITS TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.

### B. Certain Definitions

Except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein or in the Plan shall have the respective meanings assigned to them in this Article.

"COD" shall mean cancellation of indebtedness income.
"NOL" shall mean net operating loss.

### C. Certain Material Federal Income Tax Consequences

Cancellation of a debtor's debt is generally taxable income to the Debtor. COD is the amount by which the indebtedness of a debtor discharged exceeds any consideration given in exchange therefore. Cancellation of a debt may not necessarily be COD, however. To the extent that a debtor is insolvent, or if a Debtor is in bankruptcy, as is the case here, the Tax Code permits the debtor to exclude the COD from its gross income. The statutory exclusion for COD in a title 11 case generally excludes COD from gross income if the discharge is granted by a court to a debtor under its jurisdiction in a title 11 case, as is sought herein. The price for the bankruptcy COD exclusion (as well as the insolvency exclusion) is reduction of the debtor's tax attributes to the extent of the COD income, generally in the following order: NOLs for the year of the discharge and NOL carryovers from prior years; general business tax credit carryovers; minimum tax credit available as of the beginning of the year following the year of discharge; net capital loss for the

year of discharge and capital loss carryovers from prior years; basis of the debtor's assets; passive activity loss and credit carryovers from the year of discharge; and foreign tax credit carryovers to or from the year of discharge. The reduction of attributes does not occur until after the end of the debtor's tax year in which the COD occurred, so they are available to the debtor in determining the amount of its income, loss and tax liability for the year of discharge.

As a result of the implementation of the Plan, the Debtor may have COD and potential attribute reduction. Because any reduction in tax attributes does not effectively occur until the first day of the taxable year following the taxable year in which the COD is incurred, any resulting COD, on its own, should not impair the ability of the Debtor to use their tax attributes (to the extent otherwise available) to reduce their tax liability, if any, otherwise resulting from the implementation of the Plan.

Under section 382 of the Tax Code, if a corporation undergoes an "ownership shift," the amount of its Pre-Change Losses that may be utilized to offset future taxable income generally is subject to an annual limitation. The Plan calls for an ownership change and as such any current owner of the Debtor should consult his own tax adviser concerning the effect of the Plan. The United States federal income tax consequences of payment of Allowed Claims pursuant to the Plan will depend on, among other things, the consideration received, or deemed to have been received, by the holder of the Allowed Claim, whether such holder reports income on the accrual or cash method, whether such holder receives distributions under the Plan in more than one taxable year, whether such holder's Claim is allowed or disputed at the Effective Date, whether such holder has taken a bad debt deduction or worthless security deduction with respect to its Claim.

In general, a holder of a Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the amount of such holder's basis in its Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Claim and the holder, the length of time the holder held the Claim and whether the Claim was acquired at a market discount. If the holder realizes a capital loss, its deduction of the loss may be subject to limitations under the Tax Code. The holder's aggregate tax basis for any property received under the Plan generally will equal the amount realized. The amount realized by a holder generally will equal the sum of the cash and the fair market value of any other property received (or deemed received) by the holder under the Plan on the Effective Date and/or any subsequent distribution date, less the amount (if any) allocable to Claims for interest. All holders of Allowed Claims are urged to consult their tax advisors. A holder of a Claim constituting an installment obligation for tax purposes may be required to recognize currently any gain remaining with respect to the obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of Section 453B of the Tax Code.

### D. Importance of Obtaining Professional Tax Assistance

The foregoing discussion is intended only as a summary of certain U.S. federal income tax consequences of the Plan and is not a substitute for careful tax planning with a tax professional. The above discussion is for general information purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances. HOLDERS OF CLAIMS ARE URGED TO CONSULT WITH THEIR TAX

ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.

## IX. NOTICE OF PLAN OF REORGANIZATION

The Debtor has devoted substantial effort to the preparation of its Plan of Reorganization. The Debtor believes that the Plan represents the fairest and most equitable adjustment of its relationship with its creditors and will result in a payment in full to its creditors and is far superior to a foreclosure by Noteholder, which likely would yield no recovery to the other creditors.

The Debtor believes that no class of claims are impaired and therefore no votes are solicited, therefore any creditor that challenges that position shall file an objection to confirmation by the Court approved deadline.

DATED: December 4, 2023.

PLAN PROPONENT:

WC Paradise Cove Marina, L.P.
Debtor

By:

  _/s/ Natin Paul_____
By:  Natin Paul
Manager
WC Paradise Cove GP LLC,
**General Partner of the Debtor**

**HAYWARD PLLC**

_/s/ Ron Satija_____
Ron Satija
Bar Number: 24039158
Todd Headden
Bar Number: 24096285
7600 Burnet Rd, Ste. 530
Austin, TX 78757
(737) 881-7102
rsatija@haywardfirm.com
theadden@haywardfirm.com
***COUNSEL FOR DEBTOR***

Attachments: Debtor Monthly Operating Reports, Plan Projections