**The relief described hereinbelow is SO ORDERED.**

**Signed April 02, 2024.**

_____
**CHRISTOPHER G. BRADLEY**
**UNITED STATES BANKRUPTCY JUDGE**

---

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **WC PARADISE COVE MARINA, L.P.,** | § | **CASE NO. 23-10731** |
| | § | |
| | § | **Chapter 11** |
| Debtor. | § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**
**CONFIRMING AMENDED CHAPTER 11 PLAN**

WC Paradise Cove Marina, L.P. (the "Debtor,")[1], having:

a.  filed on February 26, 2024, the _Debtor's Amended Disclosure Statement Under 11 U.S.C. § 1125_ (the "Disclosure Statement") [Docket No. 125] and the _Debtor's Amended Plan of Reorganization_ (the "Plan") [Docket No. 126];

b.  distributed solicitation materials on or about February 28, 2024, consistent with the _Order (1) Approving Debtor's Amended Joint Disclosure Statement, (2) Fixing Time for Filing Objections and Acceptances or Rejections of First Amended Joint Plan and (3) Notice of Hearing on Confirmation of First Amended Joint Plan_ [Docket No. 127] (the "Solicitation Procedures Order")

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Plan and the Solicitation Procedures Order.

1

c.       filed on March 29, 2024, the Ballot Summary [Docket No. __] identifying those holders of claims accepting or rejecting the Plan;

This Court having:

a.       entered the Solicitation Procedures Order on February 27, 2024;

b.       set April 2, 2024, at 11:00 a.m., prevailing Central Time, as the date and time for the commencement of the Confirmation Hearing;

c.       reviewed the Plan, the Disclosure Statement, and all filed pleadings, exhibits, statements, and comments regarding confirmation, including any objections, statements, and reservations of rights;

d.       heard the statements, arguments, and objections made by counsel in respect of confirmation;

e.       considered all oral representations, testimony, documents, filings, and other evidence regarding confirmation;

f.       overruled any and all objections to the Plan and the confirmation thereof and all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated; and

g.       taken judicial notice of the papers and pleadings filed in the Chapter 11 Case.

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefore, the Court hereby makes and issues the following Findings of Fact, Conclusions of Law, and Orders:

## I.       FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.      Jurisdiction and Venue.**

1.      Beginning on September 4, 2023 (the "Petition Date"), the Debtor commenced its chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Venue in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court") was proper as of the Petition Date pursuant to 28 U.S.C. §§1408 and 1409 and continues to be proper during the Chapter 11 Case.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).  The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan is a core proceeding pursuant to section 157(b)(2)(L) of title 28 of the United States Code.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**B.      Eligibility for Relief.**

2.      The Debtor was and is an entity eligible for relief under section 109 of the Bankruptcy Code.

**C.      Judicial Notice.**

3.      The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for confirmation) the docket of the Chapter 11 Case maintained by the clerk of the applicable court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the applicable court during the pendency of the Chapter 11 Case.  Any resolutions of objections to confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference.  All unresolved objections, statements, and reservations of rights are overruled on the merits.

**D.      Burden of Proof.**

4.      The Debtor, as the proponent of the Plan, has met its burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation.  Further, the Debtor has proven the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

**E.      Solicitation Procedures Order.**

5.      On February 27, 2024, the Bankruptcy Court entered the Solicitation Procedures Order, which, among other things: (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (b) fixed March 27, 2024, at 5:00 p.m., as the Voting Deadline for voting to accept or reject the Plan and the deadline for objecting to the Plan; (d) fixed April 2, 2024, at 11:00 a.m. as the date and time for the commencement of the Confirmation Hearing; and (e) approved the form and method of notice of the Confirmation Hearing Notice set forth therein.

**F.      Transmittal and Mailing of Materials; Notice.**

6.      As evidenced by the Certificate of Service for the mailout [Docket No. 128], due, adequate, and sufficient notice of the Disclosure Statement, Plan, and Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, has been given to: (a) all known holders of Claims and Equity Interests; (b) parties that requested notice in accordance with Bankruptcy Rule 2002; and (c) the U.S. Trustee; and (d) parties to executory contracts, in substantial compliance with the Solicitation Procedures Order and Bankruptcy Rules 2002(b), 3017, and 3020(b), and no other or further notice is or shall be required.  Adequate and sufficient notice of the Confirmation Hearing, as continued from time to time, and other bar dates and hearings described in the Solicitation Procedures Order was given in compliance with the

Bankruptcy Rules and Solicitation Procedures Order, and no other or further notice is or shall be required.

### G. Solicitation.

7.      Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Solicitation Procedures Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws, and regulations.  Specifically, the solicitation materials approved by the Bankruptcy Court in the Solicitation Procedures Order (including the Disclosure Statement, Plan, Ballots, and Solicitation Procedures Order) were transmitted to and served on all holders of Claims or Equity Interests in Classes that were entitled to vote to accept or reject the Plan, as well as to other parties in interest in the Chapter 11 Cases, in compliance with section 1125 of the Bankruptcy Code, the Solicitation Procedures Order, and the Bankruptcy Rules.  Such transmittal and service were adequate and sufficient, and no further notice is or shall be required.  All procedures used to distribute solicitation materials to holders of Claims and Equity Interests were fair, and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

### H. Voting Certification.

8.      All procedures used to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

9.      As evidenced by the Voting Certification, all Creditors that submitted Ballots voted to accept the Plan.

**I.      Bankruptcy Rule 3016.**

10.      The Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b).

**J.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

11.      The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows.

**(i)      Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

12.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123.

***Section 1122 and 1123(a)(1)—Proper Classification.***

13.      The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article IV of the Plan provides for the separate classification of Claims and Equity Interests into Classes, based on differences in the legal nature or priority of such Claims and Equity Interests. Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Equity Interests created under the Plan, the classifications were not done for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among holders of Claims or Equity Interests.

14.      As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.  As a result thereof, the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code have been satisfied.

***Section 1123(a)(2)—Specification of Unimpaired Classes.***

15.     Article IV of the Plan specifies which Classes of Claims are impaired under the Plan, therefore the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

***Section 1123(a)(3)—Specification of Treatment of Impaired Classes.***

16.     Article IV of the Plan specifies the treatment of each Impaired Class under the Plan.  As a result thereof, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

***Section 1123(a)(4)—No Discrimination.***

17.     Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article IV of the Plan uniformly provides for the same treatment of each Claim or Equity Interest in a particular Class, as the case may be, unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment with respect to such Claim or Equity Interest.  As a result thereof, the requirements of section 1123(a)(4) of the Bankruptcy Code have been satisfied.

***Section 1123(a)(5)—Additional Plan Provisions.***

18.     Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article IV, Article V, Article VI, and various other provisions of the Plan specifically provide in detail adequate and proper means for the Plan's implementation, including: the modified, structured payment of all claims against the Debtor.  As a result thereof, the requirements of section 1123(a)(5) of the Bankruptcy Code have been satisfied.

***Section 1123(a)(6)—Voting Power of Equity Securities.***

19.     The Plan does not provide for or allow the issuance of nonvoting equity securities and otherwise complies with Bankruptcy Code section 1123(a)(6).

### *Section 1123(a)(7)—Selection of Officers and Directors.*

20. As required by and in compliance with Bankruptcy Code section 1123(a)(7), the manner of selection of the future officers and directors of the Reorganized Debtor, and any successors thereto, is consistent with the interests of holders of Claims and Interests and public policy.

### *Section 1123(b)—Discretionary Contents of the Plan.*

21. The Plan contains various provisions that may be construed as discretionary, but are not required for confirmation under the Bankruptcy Code. As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent in any way with the applicable provisions of the Bankruptcy Code. Thus, section 1123(b) of the Bankruptcy Code is satisfied.

### *(a) Section 1123(b)(1)-(2)—Claims and Executory Contracts.*

22. Pursuant to sections 1123(b)(1) and 1123(b)(2) of the Bankruptcy Code, respectively, Article IV of the Plan impairs each Impaired Class of Claims and Equity Interests, and Article VI of the Plan provides for the assumption of all Executory Contracts and Unexpired Lease upon confirmation.

23. **Preservation of Claims and Causes of Action.** Article V of the Plan appropriately provides for the preservation by the Reorganized Debtor of all Claims the Reorganized Debtor owned before the Confirmation Date, except as modified by Article IV of the Plan, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. The provisions regarding preservation of these Claims in the Plan are appropriate and are in the best interests of the Debtor, their Estates, and holders of Claims and Equity Interests.

(ii)     **Section 1129(a)(2)—Compliance of the Debtor with The Applicable Provisions of the Bankruptcy Code.**

24.     As required by Bankruptcy Code section 1129(a)(2), the Debtor, as the proponent of the Plan, has complied with all of the applicable provisions of the Bankruptcy Code, including all applicable provisions regarding disclosure and solicitation with respect to the Plan.

(iii)     **Section 1129(a)(3)—Proposal of Plan in Good Faith.**

25.     As required by Bankruptcy Code section 1129(a)(3), the Debtor has proposed the Plan in good faith and not by any means forbidden by law.  The Debtor has proposed the Plan with the legitimate and honest purpose of adjusting the Debtor's debts, reorganizing the Debtor's business, and maximizing the returns to parties in interest in the Chapter 11 Case.

(iv)     **Section 1129(a)(4)—Bankruptcy Court Approval of Certain Payments as Reasonable.**

26.     The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtor in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of and are in compliance with section 1129(a)(4) of the Bankruptcy Code.

(v)     **Section 1129(a)(5)—Identity of the Reorganized Debtor.**

27.     As required by Bankruptcy Code section 1129(a)(5)(A), the Debtor have disclosed the identity, affiliation and proposed compensation of the persons proposed to continue in service as directors and officers of the Reorganized Debtor.  In this case, the Debtor have disclosed that the Debtor shall retain its current management after the confirmation of the Plan.

(vi)     **Section 1129(a)(6)—Approval of Rate Changes.**

28.     The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval, therefore section 1129(a)(6) of the Bankruptcy Code is satisfied.

      **(vii)**    **Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

29.    The evidence proffered or adduced at or prior to, or in affidavits in connection with, the Confirmation Hearing regarding the liquidation value of the Debtor's estate: (a) is reasonable, persuasive, and credible; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that, with respect to each Impaired Class, each holder of an Allowed Claim or Equity Interest in such Class has voted to accept the Plan or will receive under the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive if the Debtor were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. Thus, the Plan satisfies the "best interests of creditors test" set forth in section 1129(a)(7) of the Bankruptcy Code.

      **(viii)**    **Section 1129(a)(8)—Acceptance of the Plan by Each Impaired Class.**

30.    All Impaired classes have not accepted the Plan. Therefore, confirmation is granted under section 1129(b) because the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan.

      **(ix)**    **Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

31.    The treatment of Allowed Administrative Claims and Allowed Priority Tax Claims under Article III of the Plan satisfies the requirements of and complies in all respects with section 1129(a)(9) of the Bankruptcy Code.

      **(x)**    **Section 1129(a)(10)—Acceptance By At Least One Impaired Class.**

32.    As set forth in the Voting Certification (as amended from time to time), all Classes have voted to accept the Plan. As such, there is at least one Class of Claims that is Impaired

under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider, thus satisfying section 1129(a)(10) of the Bankruptcy Code in all respects.

### (xi) Section 1129(a)(11)—Feasibility of the Plan.

33.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence proffered or adduced at, or prior to, or in affidavits filed in connection with, the Confirmation Hearing: (a) is reasonable, persuasive, and credible; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible and confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtor or any successor to the Reorganized Debtor under the Plan; and (d) establishes that the Reorganized Debtor will have sufficient funds available to meet its obligations under the Plan, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

### (xii) Section 1129(a)(12)—Payment of Bankruptcy Fees.

34.     Article X of the Plan provides that all fees payable pursuant to section 1930 of the United States Judicial Code, will be paid on the Effective Date and thereafter in the ordinary course of business as may be required.  The Plan therefore satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

### (xiii) Section 1129(a)(13)—Retiree Benefits.

35.     Section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan as the Debtor have no retiree benefit obligations.

### (xiv) Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Class.

36.     Section 1129(b) of the Bankruptcy Code is inapplicable to the Plan as there are no Classes of Claims that rejected the Plan.

(xv)    **Section 1129(c)—Only One Plan.**

37.    Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Case.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

(xvi)    **Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes.**

38.    No Governmental Unit has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not such avoidance.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**K.    Satisfaction of Confirmation Requirements.**

39.    Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**L.    Good Faith.**

40.    The Debtor and its respective partners, principals, agents, financial advisers, attorneys, employees, affiliates, and representatives have been, are, and will continue to act in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by the Confirmation Order.

**M.    Transfers by Debtor; Vesting of Assets.**

41.    All transfers of Estate Property shall be free and clear of all Liens, charges, Claims, encumbrances, and other interests, except as expressly provided in the Plan.

**N.      Implementation.**

42.      All documents and agreements necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith, at arm's length, and are in the best interests of the Debtor and the Reorganized Debtor and shall, upon completion of documentation and execution be valid, binding, and enforceable documents and agreements not in conflict with any federal or state law.

## II.      NON-MATERIAL MODIFICATIONS TO THE PLAN

Pursuant to Bankruptcy Rule 3019 and section 1223 of the Bankruptcy Code, the Plan and its exhibits are modified as noted below.

43.      All claims of a kind specified in section 507(a)(2) shall be paid in full by the Effective Date of the Plan.

44.      Class 2 Claims of CC2 TX, LLC ("Caz") shall be treated as follows:

**Class 2 Claimant – CC2 TX, LLC ("Caz")**

1.      Caz's Proof of Claim No. 3-2 is supported by a Tax Payment Agreement executed by the Debtor on April 30, 2021 in the original principal amount of $84,323.38 (the "Caz Creek Note").  As of September 4, 2023 (the "Petition Date"), Caz alleges that the amount owing under the Caz Creek Note is $77,396.05.  The transferred tax liens are evidenced by a Tax Lien Contract dated April 30, 2021, a Certified Statement of Transfer of Tax Lien and a Sworn Document Authorizing Transfer of Tax Lien (together the "Security Documents").  Because Caz is oversecured, the amount owed to Caz relating to Proof of Claim No. 3-2 is entitled to interest at the Annual Interest Rate (as such term is defined in the Caz Creek Note) from and after the Petition Date until the Effective Date, and to accrue costs, charges and fees pursuant to 11 U.S.C. § 506(b).

Any allowed amount of Caz's claim relating to Proof of Claim No. 3-2 (together with interest, costs, charges and fees pursuant to 11 U.S.C. § 506(b) or as otherwise provided in the Caz Creek Note) shall be paid in accordance with the Caz Creek Note, (including but not limited to interest at the Annual Interest Rate), save and except the following:

  a. Payments from and after the Effective Date will begin on the first day of the month following the Effective Date and will continue on the same day of each month thereafter for a term of one hundred twenty (120) months;

  b. The "Maturity Date" is the first day of the month in the one hundred twentieth month after the Effective Date; and

  c. The Debtor's monthly payment will be in an amount necessary to fully amortize the allowed amount of Caz's claim relating to Proof of Claim No. 3-2 (together with interest, costs, charges and fees pursuant to 11 U.S.C. § 506(b)) as of the Effective Date over a period of one hundred twenty (120) months, together with interest from and after the Effective Date at the Annual Interest Rate (as defined in the Caz Creek Note).

2.     Caz shall file an application requesting allowance of any attorney's fees under 11 U.S.C. § 506(b) within thirty (30) days following entry of an order confirming this Plan.  The Debtor shall file any objection to Proof of Claim No. 3-2 or Caz's application under 11 U.S.C. § 506(b) relating to Proof of Claim No. 3-2 on or before forty-five (45) days following entry of an order confirming this Plan. If no such objection is filed, Proof of Claim No. 3-2, and all amounts requested by Caz under 11 U.S.C. § 506(b) relating to Proof of Claim No. 3-2 shall be deemed to be fully and finally allowed.

3.     Caz shall retain all its liens pursuant to the security documents on Debtor's property in its current lien priority to secure repayment of amounts to be paid to Caz under the Caz Creek Note.  All other terms of the Caz Creek Note, and

the related security documents shall remain in full force and effect except as modified by this Plan.  The Class 2 Creditor is impaired under this Plan.

### III.  ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

**A.  Order.**

45.  This Confirmation Order shall confirm the Plan, as modified herein.  A copy of the Plan is attached hereto as Exhibit A.  The Plan and this Order shall be binding on all creditors and parties-in-interest in the Chapter 11 Case or against the Debtor, the Estate, or its property, and on all equity interest holders in the Debtor, and on all holders of any interest, including *in rem* interests in the Debtor or its property, whether or not the same filed any proof of claim or interest, and whether or not the same voted on, or accepted, the Plan, or is impaired under the Plan.

**B.  Objections.**

46.  To the extent that any objections, reservations of rights, statements, or joinders to confirmation have not been withdrawn, waived, or settled prior to entry of the Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits.

**C.  Findings of Fact and Conclusions of Law.**

47.  The findings of fact and the conclusions of law stated in the Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

### D. Confirmation of the Plan.

48.     The Plan and each of its provisions are confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code. The documents referenced in the Plan and any amendments, modifications, and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto and documents referred to in such papers), and the execution, delivery, and performance thereof by the Debtor is authorized and approved as finalized, executed, and delivered. Without further order or authorization of the Bankruptcy Court, the Debtor is authorized and empowered to make all modifications to all documents included as part of the Plan that are consistent with the Plan. As set forth in the Plan, as of the Effective Date, any documents contemplated by the Plan shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all Liens and other security interests purported to be created thereby.

49.     The terms of the Plan and exhibits thereto are incorporated by reference into, and are an integral part of, the Confirmation Order. The terms of the Plan, all exhibits thereto, and all other relevant and necessary documents, shall be effective and binding as of the Effective Date of the Plan.

### E. Plan Classification Controlling.

50.     The terms of the Plan shall solely govern the classification of Claims and Equity Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the holders of Claims or Equity Interests in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for

distribution purposes; (c) may not be relied upon by any holder of a Claim or Equity Interest as representing the actual classification of such Claim or Equity Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtor and the Post-Confirmation Debtor.

**F.  The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.**

51.  The following releases, injunctions, exculpations, and related provisions set forth in Article X of the Plan are hereby approved and authorized in their entirety:

AS OF THE CONFIRMATION DATE AND AS PROVIDED IN ARTICLE X OF THE PLAN, EXCEPT AS PROVIDED IN THE CONFIRMATION ORDER OR THE PLAN, ALL ENTITIES SHALL BE PRECLUDED FROM THE COMMENCEMENT OR CONTINUATION OF ANY JUDICIAL, ADMINISTRATIVE, OR OTHER ACTION OR PROCEEDING ON ACCOUNT OF ANY PREPETITION CLAIMS AGAINST THE REORGANIZED DEBTOR. FROM AND AFTER CONFIRMATION, ALL HOLDERS OF PREPETITION CLAIMS AGAINST THE DEBTOR ARE PERMANENTLY RESTRAINED AND ENJOINED (A) FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, NATIN PAUL OR CRESTONE PROPERTY GROUP, LLC IN THEIR CAPACITY AS GUARANTORS OR THEIR ASSETS; (B) FROM ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THE GUARANTORS, OR THEIR ASSETS; (C) FROM CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THE GUARANTORS, OR THEIR ASSETS; (D) FROM ASSERTING ANY SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE TO THE DEBTOR, OR THE REORGANIZED DEBTOR, OR THE GUARANTORS EXCEPT AS MAY BE ALLOWED UNDER THE BANKRUPTCY CODE; AND (E) FROM PERFORMING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN; PROVIDED, HOWEVER, THAT EACH HOLDER OF A CONTESTED CLAIM MAY CONTINUE TO PROSECUTE ITS PROOF OF CLAIM IN THE BANKRUPTCY COURT AND ALL HOLDERS OF CLAIMS SHALL BE ENTITLED TO ENFORCE THEIR RIGHTS UNDER THE PLAN AND ANY AGREEMENTS INCORPORATED BY THE PLAN AND/OR EXECUTED OR DELIVERED PURSUANT TO OR IN CONNECTION WITH THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY, NOTHING IN THIS PARAGRAPH SHALL RESTRICT: (I) ANY RIGHTS OF THE NOTEHOLDER UNDER THE PLAN OR THE LOAN DOCUMENTS, AS MAY BE MODIFIED BY THE PLAN; OR (II) THE NOTEHOLDER'S RIGHT TO COMMENCE ANY ACTION OR OTHER PROCEEDING OR ENFORCE ANY REMEDY OF ANY KIND AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THE

GUARANTORS OR THEIR ASSETS FOR A CLAIM OR CAUSE OF ACTION ARISING FROM ANY PROVISION OF THE PLAN OR THE LOAN DOCUMENTS, AS MAY BE MODIFIED BY THE PLAN, THAT FIRST ARISES OR OTHERWISE ACCRUES FROM OR AFTER THE EFFECTIVE DATE OF THE PLAN.

### G. Post-Confirmation Notices and Bar Dates.

#### (i) Notice of Entry of the Confirmation Order.

52. In accordance with Bankruptcy Rules 2002 and 3020(c), within ten business days of the date of entry of the Confirmation Order, the Debtor shall serve the notice of confirmation, in substantially the form attached hereto as Exhibit B, by CM/ECF; United States mail, first class postage prepaid; by hand; or by overnight courier service to all parties having been served with the Confirmation Hearing Notice. Mailing of the Notice of Confirmation in the time and manner set forth in this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no other or further notice is necessary.

53. The Notice of Confirmation shall have the effect of an order of the Bankruptcy Court, shall constitute sufficient notice of the entry of the Confirmation Order to such filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

### H. Binding Effect.

54. Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Post-Confirmation Debtor, and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein,

each Person acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor.

55.     The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Person.

**I.      Retention of Jurisdiction.**

56.     The Bankruptcy Court retains jurisdiction after confirmation, and even after the case has been closed, over all matters arising under, arising in, or relating to the Debtor's Chapter 11 Case.

**J.      References to Plan Provisions.**

57.     The failure specifically to include or to refer to any particular article, section, or provision of the Plan or any related document in the Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan and any related documents be confirmed in their entirety.

**K.      Governing Law.**

58.     Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

**L.      Effectiveness of All Actions.**

59.      Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to the Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the Debtor.

**M.      Approval of Consents.**

60.      This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

**N.      Changes to Plan.**

61.      Subject to the restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves its right to revoke or withdraw, or to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Entry of the Confirmation Order means that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

O.      **Ownership and Control**

62.     The Consummation of the Plan shall not constitute a change of ownership or change in control, as such terms are used in any statute, regulation, contract, or agreement, including, but not limited to, any employment, severance, or termination, or insurance agreements, in effect on the Effective Date and to which the Debtor is a party or under any applicable law of any applicable Governmental Unit.

P.      **Effect of Conflict Between Plan and Confirmation Order.**

63.     If there is any direct conflict between the terms of the Plan and the terms of the Confirmation Order, the terms of the Confirmation Order shall control.

Q.      **Authorization to Consummate.**

64.     The Debtor are authorized to consummate the Plan at any time 15 or more days following the entry of this Order.

R.      **Final Confirmation Order.**

65.     This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

IT IS SO ORDERED.

###

Ron Satija
HAYWARD PLLC
7600 Burnet Road, Suite 530
Austin, Texas 78757
737.881.7102 phone/fax
rsatija@haywardfirm.com
ATTORNEY FOR DEBTOR

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| | § | Case No. 23-10731-CGB |
| WC PARADISE COVE MARINA, L.P., | § | |
| | § | |
| Debtor. | § | Chapter 11 |

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

DATED: February 26, 2024.

HAYWARD PLLC

*/s/ Ron Satija*
Ron Satija
Bar Number: 24039158
Todd Headden
Bar Number: 24096285
7600 Burnet Rd, Ste. 530
Austin, TX 78757
(737) 881-7102
rsatija@haywardfirm.com
theadden@haywardfirm.com

***COUNSEL FOR DEBTOR***

15225971

Exhibit A

## Contents

INTRODUCTION...........................................................................................................................4

**ARTICLE I - DEFINITIONS AND RULES OF INTERPRETATION** ..................................4
  1.01   **Defined Terms** ...................................................................................................4
  1.02   **Rules of Interpretation** ..................................................................................10
  1.03   **Computation of Time** ....................................................................................11
  1.04   **References to Currency** .................................................................................11
  1.05   **Reference to the Debtor or the Reorganized Debtor** .................................11
  1.06   **Controlling Document** ..................................................................................11

**ARTICLE II - OVERVIEW OF THE PLAN** ..........................................................................11
  2.01   **Generally**.........................................................................................................11

**ARTICLE III - TREATMENT OF UNCLASSIFIED CLAIMS** ...........................................11
  3.01   **Unclassified Claims** ......................................................................................11
  3.02   **Administrative Claims** ..................................................................................12
  3.03   **Statutory Fees** ...............................................................................................12
  3.04   **Priority Tax Claims** ......................................................................................12
  3.05   **Security Deposit Claims** ...............................................................................12
  3.06   **Professional Fee Claims**................................................................................12
  3.07   **Post-Effective Date Fees and Expenses** .......................................................12

**ARTICLE IV - CLASSIFICATION AND TREATMENT OF CLAIMS** ...........................13

**AND EQUITY INTERESTS**.....................................................................................................13
  4.01   **Introduction**...................................................................................................13
  4.02   **Summary of Classification** ...........................................................................13
  4.03   **Designation of Unimpaired and Impaired Classes** ...................................13
  4.04   **Acceptance of the Plan**..................................................................................13
  4.05   **Nonconsensual Confirmation** .......................................................................14
  4.06   **Classification and Treatment of Claims and Equity Interests**...................14
  **Class 1 – Allowed Secured Claim of Travis County** ...........................................14
          **Class 2 – Secured Claim of Caz Creek Holdings 2, LLC.** ........................14
  **Class 3 – Allowed Secured Claims of Noteholder** ..............................................15
  **Class 4 – Allowed Unsecured Claims.** .................................................................20
  **Class 5 – Equity Interests.** ...................................................................................21

**ARTICLE V - IMPLEMENTATION OF PLAN** ...................................................................21
  5.01   **Reorganized Debtor** .....................................................................................21
  5.02   **Vesting of Assets**............................................................................................21
  5.03   **Vesting and Enforcement of Causes of Action** ...........................................21
  5.04   **Preservation of Causes of Action**................................................................21

15225971

5.05   The Reorganized Debtor's Obligations Under the Plan..........................................22
5.06   Exemption from Transfer Taxes ........................................................................22

ARTICLE VI - TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ...........................................................................................................................23
6.01   Assumption or Rejection of Executory Contracts and Unexpired Leases. .........23
6.02   Objections to Assumption of Executory Contracts and Unexpired Leases.........23
6.03   Payments Related to Assumption of Executory Contracts and Unexpired Leases
       23
6.04   Bar Date for Rejection Damages .......................................................................24
6.05   Insurance Policies..............................................................................................24

ARTICLE VII - DETERMINATION OF CLAIMS ..........................................................24
7.01   Objections to Claims..........................................................................................24
7.02   Undeliverable/Returned Distributions................................................................24
7.03   Additional Charges ............................................................................................25

ARTICLE VIII - CONDITIONS PRECEDENT ................................................................25
8.01   Conditions to Confirmation ...............................................................................25
8.02   Conditions to Effectiveness ...............................................................................26
8.03   Waiver of Conditions .........................................................................................26

ARTICLE IX - JURISDICTION OF THE COURT ..........................................................26
9.01   General Retention of Jurisdiction ......................................................................26
9.02   Specific Purposes...............................................................................................26

ARTICLE X - EFFECT OF CONFIRMATION .................................................................28
10.01  General ..............................................................................................................28
10.02  Plan Injunction ..................................................................................................28
10.03  Discharge of Claims ..........................................................................................29
10.04  Indemnification Obligations ..............................................................................29
10.05  Payment to the United States Trustee.................................................................29
10.06  Post-Petition Reports and Payments to the United States Trustee .....................29
10.07  Retention of Claims and Interests ......................................................................30
10.08  Setoffs ...............................................................................................................30

ARTICLE XI - NOTICES...................................................................................................30
11.01  General ..............................................................................................................30

ARTICLE XII - DEFAULT ................................................................................................30
12.01 Default by Debtor................................................................................................30

ARTICLE XIII - MISCELLANEOUS ...............................................................................30
13.01  Amendment or Modification to Plan...................................................................30
13.02  Correction of Plan .............................................................................................31
13.03  Revocation of Plan ............................................................................................31
13.04  Binding Effect....................................................................................................31
13.05  Notices ...............................................................................................................31

15225971

Exhibit A

**13.06 Final Allowance** .................................................................................................. **31**
**13.07 Consummation** ...................................................................................................... **31**
**13.08 Disbursing Agent** ................................................................................................. **32**
**13.09 Further Authorization** ......................................................................................... **32**
**13.10 Means of Cash Payment** ...................................................................................... **32**
**13.11 Plan Supplement** .................................................................................................. **32**
**13.12 Severability of Plan Provisions** ......................................................................... **32**
**13.13 Governing Law** ..................................................................................................... **32**
**13.14 Conflicts** ................................................................................................................ **33**
**13.15 Entire Agreement** ................................................................................................ **33**

## INTRODUCTION

    **WC Paradise Cove Marina, LP** (the "**Debtor**"), the Debtor in this chapter 11 case, proposes the following *Amended Plan of Reorganization* (the "**Plan**") for the treatment of its outstanding claims and equity interests. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

    Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and Section 13.01 of this Plan, the Debtor reserves the right to alter, amend, or modify this Plan.

## ARTICLE I - DEFINITIONS AND RULES OF INTERPRETATION

    **1.01   Defined Terms.** Capitalized terms used in the Plan that are not defined in Article I but are defined in the Bankruptcy Code shall have the respective meanings specified in the Bankruptcy Code. The following terms used in the Plan shall have the respective meanings defined below:

"**Administrative Claim**" or "**Administrative Expense**" means a Claim for any cost or expense of administration of the Chapter 11 Case Allowed pursuant to sections 503(b), 507(b) or 546(c)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including: (a) fees payable pursuant to 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's business; (c) actual and necessary costs and expenses of preserving the Estate or administering this Chapter 11 Case; and (d) all Professional Fee Claims to the extent Allowed by Final Order pursuant to sections 330, 331, or 503 of the Bankruptcy Code.

"**Administrative Claims Bar Date**" means the first Business Day that is 30 days after the Effective Date.

"**Allowed**" means either: (i) a Claim against the Debtors or their property that is allowable under the Bankruptcy Code to the extent that a proof of claim, proof of interest, or request for payment was timely filed, has not been amended, and as to which no objection has been filed or, if an objection has been filed, is allowed by a Final Order, unless otherwise provided in this Plan, or (ii) a Claim against the Debtors or their properties that is scheduled and not listed as disputed,

15225971

contingent or unliquidated, and as to which Claim no objection has been filed or, if an objection is filed, is allowed by a Final Order.

"**Avoidance Action**" means causes of action arising under chapter 5 of the Bankruptcy Code, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer and fraudulent conveyance laws, whether or not litigation has been commenced to prosecute such causes of actions.

"**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time and applicable to this Chapter 11 Case.

"**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or such other court as may have jurisdiction over this Chapter 11 Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended and prescribed pursuant to 28 U.S.C. § 2075, applicable to this Chapter 11 Case.

"**Bar Date**" means the date or dates fixed by the Bankruptcy Court by which Persons asserting a Claim against, or Equity Interest in, the Debtor (except Administrative Claims, Professional Fee Claims, and Rejection Damages Claims) are required to file a proof of claim or equity interest or a request for payment or be forever barred from asserting a Claim against or Equity Interest in the Debtor or its property, and from sharing in distributions under this Plan.

"**Business Day**" means any day other than a Saturday, Sunday, or Legal Holiday (as defined in Bankruptcy Rule 9006).

"**Cameron Assignment**" means the assignment of the Loan Agreement, Note, and all other Loan Documents and all indebtedness arising under the Loan Agreement, and all liens and security interests securing such indebtedness, included the Deed of Trust, by Northwest Federal Credit Union to Austin Cameron and Jenny Cameron on February 25, 2022.

"**Cash**" means currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

"**Causes of Action**" means any and all actions, proceedings, causes of action, obligations, suits, judgments, damages, demands, debts, accounts, controversies, agreements, promises, liabilities, powers to avoid transfers, legal remedies, equitable remedies, and claims (and any rights to any of the foregoing) belonging to the Debtor or its Estate, whether core or non-core, known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, known or unknown, foreseen or unforeseen, fixed, contingent, matured, unmatured, disputed, undisputed, then existing or thereafter arising, secured or unsecured, whether asserted or assertible directly or derivatively or as a defense, counterclaim or cross-claim, in law, equity or otherwise including any recharacterization, subordination, avoidance or other claim, power or right arising under or pursuant to § 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law

5

Exhibit A

"**Chapter 11 Case**" or "**Case**" means this case under Chapter 11 of the Bankruptcy Code in which the Debtor is the Debtor and Debtor-in-possession, pending before the Bankruptcy Court.

"**Claim**" has the meaning assigned to such term by section 101(5) of the Bankruptcy Code.

"**Claim Objection Deadline**" means the first Business Day that is the latest of (i) 10 days after the Effective Date; or (ii) such other date as may be established by the Bankruptcy Court.

"**Class**" or "**Classification**" means the particular class designated in the Plan, pursuant to section 1122 and section 1129 of the Bankruptcy Code, into which the Claims of all Creditors have been segregated for purposes of voting and distributions.

"**Closing**" means the execution and delivery of all documents necessary to effectuate the Plan and the funding of payments to be made on the Effective Date of the Plan.

"**Confirmation Date**" means the date the Bankruptcy Court enters the Confirmation Order.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan in accordance with the Bankruptcy Code.  The Confirmation Order need not necessarily be a Final Order.

"**Contingent Claim**" means any Claim for which a proof of claim has been filed with the Bankruptcy Court that: (a) was not filed in a fixed amount or has not accrued and depends on a future event that has not occurred and may never occur; and (b) has not been Allowed on or before the Confirmation Date.

"**Creditor**" has the meaning assigned to such term by Section 101(10) of the Bankruptcy Code.

"**Crestone Guaranty**" means the Unconditional and Continuing Guaranty and Subordination Agreement, dated as of April 23, 2015, by and between Crestone Property Group, LLC, and Noteholder, as successor by assignment to Northwest Federal Credit Union, and its successors and assigns, as may be amended from time to time.

"**Debtor**" means WC Paradise Cove Marina, LP, the debtor in this Case.

"**Deed of Trust**" means the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated April 23, 2015, granting Noteholder, as successor by assignment to Northwest Federal Credit Union, and its successors and assigns, a security interest and lien in the Property, as may be amended from time to time.

"**Disallowed**" means a Claim or any portion of a Claim that has been filed late, disallowed, overruled, withdrawn or expunged by Final Order.  The term "Disallowed," when used to modify a reference in this Plan to any Claim, Equity Interest, Class of Claims, or Class of Equity Interests, means a Claim or Equity Interest (or any Claim or Equity Interest in any Class) that is so disallowed.

15225971

Exhibit A

"**Disputed**" means (i) a Claim, Equity Interest or Administrative Expense Claim that is subject to a pending objection; or (ii) until the deadline in the Plan for filing objections to claims:

(a)     a claim for which a corresponding Claim has not been listed in the Debtor's Schedules or for which the corresponding Claim is listed in the Debtor's Schedules with a differing amount, with a differing classification, or as a disputed, contingent, or unliquidated Claim; and

(b)     in any event, a Claim which has been paid during the pendency of this Chapter 11 Case pursuant to an order of the Court allowing the payment of such pre-petition claim.

"**Distributions**" means a payment of Cash to the holders of Allowed Claims pursuant to the Plan.

"**Effective Date**" means the later of the first Business Day that is fifteen (15) days after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect; and (b) all conditions to effectiveness set forth in Section 8.02 of this Plan have been satisfied or waived.

"**Entity**" shall have the meaning assigned to such term by Section 101(15) of the Bankruptcy Code.

"**Equity Interest**" means any equity interest in the Debtor represented by (i) any class or series of common or preferred stock, (ii) any membership interest; or (iii) any general or limited partnership interest issued before the Effective Date, and any warrants, options, or rights to purchase any common or preferred stock.

"**Estate**" means the estate for the Debtor created in this Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

"**Executory Contract**" means any contract or agreement between the Debtor and any Person or entity pursuant to which a duty of performance remains on one or both sides.

"**Final Order**" means an order of a court: (a) to which the time to appeal, petition for writ of certiorari, or otherwise seek appellate review or to move for reargument, rehearing or reconsideration has expired and as to which no appeal, petition for writ of certiorari, or other appellate review, or proceedings for reargument, rehearing, or reconsideration shall then be pending; or (b) as to which any right to appeal, petition for certiorari, or move for reargument, rehearing, or reconsideration shall have been waived in writing by the party with such right; or (c) in the event that an appeal, writ of certiorari, or other appellate review or reargument, rehearing, or reconsideration thereof has been sought, which shall have been affirmed by the highest court to which such order was appealed, from which writ of certiorari or other appellate review or reargument, rehearing, or reconsideration was sought, and as to which the time to take any further appeal, to petition for writ of certiorari, to otherwise seek appellate review, and to move for reargument, rehearing, or reconsideration shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or pursuant to section 1144 of the Bankruptcy Code, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

15225971

"**Holder**" and, collectively, "**Holders**," means a Person or Entity legally or beneficially, as applicable, holding a Claim or Equity Interest.

"**Insider**" means an insider of the Debtor as defined in § 101(31) of the Bankruptcy Code.

"**LCRA**" means the Lower Colorado River Authority.

"**Lien**" has the meaning assigned to such term by section 101(37) of the Bankruptcy Code, except for a lien that has been avoided in accordance with sections 544, 545, 546, 547, 548, or 549 of the Bankruptcy Code or applicable state law.

"**Loan Agreement**" means the Loan and Security Agreement dated April 23, 2015, by and between the Debtor and Noteholder, as successor by assignment to Northwest Federal Credit Union, and its successor and assigns, as may be amended from time to time.

"**Loan Documents**" means, collectively, the Note, Loan Agreement, Deed of Trust and every other agreement, document and instrument executed in connection with the Loan Agreement or evidencing, securing or otherwise ancillary to the Note, as the same may from time to time be modified, amended, restated or replaced, and which were assigned to Austin and Jenny Cameron pursuant to the Cameron Assignment and further assigned by Austin and Jenny Cameron to the Noteholder pursuant to the Noteholder Assignment.

"**Monetary Default Cure Period**" means five (5) Business Days from the date of written notice of the occurrence of the applicable Event of Default.

"**Natin Paul Guaranty**" means the Unconditional and Continuing Guaranty and Subordination Agreement, dated as of April 23, 2015, by and between Natin Paul, and Noteholder, as successor by assignment to Northwest Federal Credit Union, and its successors and assigns, as may be amended from time to time.

"**Non-Monetary Default Cure Period**" means thirty (30) days from the date of written notice of default, which notice shall be provided in accordance with the noticing requirements of Section 9.1 of the Loan Agreement.

"**Note**" means the Debtor's promissory note, dated April 23, 2015, in favor of Noteholder, as successor by assignment to Northwest Federal Credit Union, and its successors and assigns, in the amount of $3,200,000.00, as may be amended from time to time.

"**Noteholder**" or "**AC,**" means AC VIP PC Marina Debt, LLC, or its Assignee.

"**Noteholder Action**" means all potential claims and Causes of Action against Noteholder and any parties working in concert with Noteholder.

"**Noteholder Assignment**" means the assignment of the Loan Agreement, Note, and all other Loan Documents and all indebtedness arising under the Loan Agreement, and all liens and security interests securing such indebtedness, included the Deed of Trust, by Austin Cameron and Jenny Cameron to the Noteholder on March 16, 2022.

8

15225971

Exhibit A

"**Person**" means any individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or associated political subdivision.

"**Petition Date**" means September 4, 2023, the date when the Chapter 11 Case was initiated by the Debtor by filing its voluntary petition pursuant to the Bankruptcy Code.

"**Plan**" means this Plan, either in its present form or as it may be amended, supplemented, or modified from time to time in accordance with the terms of this Plan, including, except where the context otherwise requires, all its annexed exhibits.

"**Plan Supplement**" means the compilation of documents and forms of documents, all of which may be amended, modified, replaced and/or supplemented from time to time, which may be filed with the Bankruptcy Court on or before the date that is seven (7) days prior to the scheduled commencement of the Confirmation Hearing that are required in order to consummate the Plan, including but not limited to the forms and lists as specified in the Plan and Disclosure Statement.

"**Priority Tax Claim**" means any Claim of a governmental unit entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

"**Priority Secured Tax Claim**" means a Secured Claim of a governmental entity whose claim would be a Priority Tax Claim pursuant to sections 502(i) or 507(a) of the Bankruptcy Code if it was not a Secured Claim.

"**Professional**" means a Person: (a) employed in this Chapter 11 Case in accordance with an order of the Bankruptcy Court pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code or order of the Bankruptcy Court; or (b) for whom compensation and reimbursement has been Allowed by a Final Order pursuant to section 503(b) of the Bankruptcy Code.

"**Professional Fee Bar Date**" means the first Business Day that is 30 days after the Effective Date.

"**Professional Fee Claim**" means an Administrative Claim for compensation and reimbursement of expenses of a Professional rendered or incurred before the Effective Date submitted in accordance with sections 328, 330, 331, or 503(b) of the Bankruptcy Code.

"**Property**" shall mean the approximately 258.545-acre parcels of real property and as appropriate docks and other related personal property located at 17141 Rocky Ridge Rd, Austin, TX 78734.

"**Pro Rata**" means a proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim or Equity Interest in a Class to the amount of such Allowed Claim or Equity Interest is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims or Equity Interests in that Class to the amount of all Allowed Claims or Equity Interests in that Class.

"**Proof of Claim**" means a proof of claim filed against the Debtor in this Chapter 11 Case.

"**Refinance**" or "**Refinancing**" shall mean a refinance of the obligations to the Noteholder.

15225971

"**Rejection Damages Bar Date**" means the date that is thirty (30) days after the entry of an order of the Bankruptcy Court authorizing rejection of the Executory Contracts or unexpired leases, which order may be the Confirmation Order.

"**Reorganized Debtor**" means the Debtor on and after the Effective Date.

"**Schedules**" means the schedules of assets and liabilities, the list of holders of interests, and the statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as the schedules, list, and statements may have been or may be supplemented or amended from time to time.

"**Secured**" means any Claim (a) listed in the Schedules as a liquidated, non-contingent, and undisputed secured Claim; or (b) reflected in a proof of claim as a Secured Claim, secured by a Lien to the extent of the value of the collateral securing such Lien, as determined in accordance with section 506(a) of the Bankruptcy Code, or, if the Claim is subject to setoff pursuant to section 553 of the Bankruptcy Code, net of the setoff. The term "Secured," when used to modify a reference in this Plan to any Claim or Class of Claims means a Claim (or any Claim in any Class) that is so Secured.

"**Security Deposit Claims**" means the claims of boat owners who rent slips to any security deposit as determined by their contract with the Debtor.

"**Solicitation**" means the solicitation by the Debtor from Holders of Claims and Equity Interests entitled to vote on the Plan pursuant to section 1126(b) of the Bankruptcy Code.

"**Substantial Consummation**" shall mean the commencement of distribution pursuant to the Plan as contemplated by section 1101(c) of the Bankruptcy Code.

"**Statement of Financial Affairs**" means the Statement of Financial Affairs (and any amendments or supplements thereto) filed by the Debtor in this Chapter 11 Case.

"**Taxing Authorities**" shall mean the various local, state, and federal taxing authorities with jurisdiction regarding the property of the Debtor.

"**Unsecured**" means any Claim against the Debtor's Estate for which the holder has no security for the repayment thereof and for which the holder is not entitled to any priority under the Bankruptcy Code. The term "Unsecured," when used to modify a reference in this Plan to any Claim or Class of Claims, means a Claim (or any Claim in any Class) that is so Unsecured.

"**U.S. Trustee**" means the Office of the United States Trustee for the Western District of Texas.

"**U.S. Trustee Fees**" means fees arising under 28 U.S.C. § 1930(a)(6).

    **1.02    Rules of Interpretation.**  Unless otherwise provided herein for purposes of the Plan: (a) whenever it is appropriate from the context, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially

15225971

on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (d) any reference to any Entity as a holder of a Claim includes that Entity's successors and assigns; (e) all references in the Plan to sections, Articles, and exhibits are references to sections, Articles, and exhibits of or to the Plan; (f) the words "herein," "hereof," "hereunder," "hereto" and others of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and sections are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Plan; and (h) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

**1.03    Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

**1.04    References to Currency.**  All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**1.05    Reference to the Debtor or the Reorganized Debtor.**  Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or the Reorganized Debtor shall mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

**1.06    Controlling Document.**  In the event of an inconsistency between the Plan and the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing, other than the Plan Supplement), the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II - OVERVIEW OF THE PLAN

**2.01    Generally.** The Debtor operates a marina on Lake Travis in Austin, Texas. The marina rents slips monthly to boat owners including tour and party boats.

Under the Plan, the Reorganized Debtor will pay claims under a payment plan beginning upon the Effective Date of the Plan. Debtor will market its Property with a planned sale or refinance of the Noteholder claim within one year. The Debtor will pay unclassified claims and other allowed claims as described below in Articles III and IV.

## ARTICLE III - TREATMENT OF UNCLASSIFIED CLAIMS

**3.01    Unclassified Claims**.  As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, the Plan.  Holders of Administrative Expense Claims and Priority Tax Claims are not entitled to vote on this Plan but, rather, are treated separately in accordance with Sections 3.02 and 3.04 of this Plan and pursuant to section 1129(a)(9)(A) of the Bankruptcy Code.

15225971

**3.02    Administrative Claims**.  Each holder of an Allowed Administrative Claim (except any holder that agrees to a lesser or otherwise different treatment) shall be paid in full, in Cash, in full satisfaction of such Claim, on the later of the Effective Date or the date on which such Administrative Claim becomes an Allowed Claim, *provided, however*, that (a) Allowed Administrative Claims representing (1) post-petition liabilities incurred in the ordinary course of business by the Debtor or (2) post-petition contractual liabilities arising under loans or advances to the Debtor, whether or not incurred in the ordinary course of business, shall be paid in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto, and (b) Professional Fee Claims shall be paid on the later of (i)  the Effective Date, or (ii) five (5) days following the date of a Final Order determining and Allowing such Claim as a Professional Fee Claim.

**3.03    Statutory Fees**.  On or before the Effective Date, Administrative Expense Claims for fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, will be paid in Cash equal to the Allowed amount of such Administrative Expense Claims.  All fees payable pursuant to 28 U.S.C. § 1930 subsequent to the Confirmation Date will be paid by the Reorganized Debtor in accordance therewith until the entry of a Final Decree.

**3.04    Priority Tax Claims**. Priority Tax Claims shall be paid in full in equal monthly installments of principal and interest, commencing on the first day of the first month following the Effective Date and continuing on the first day of each succeeding month until the expiration of 60 months from the Petition Date.  Interest shall begin to accrue as of the Petition Date and will paid at the rate of 12% per annum. The only claim asserting priority status is that of the IRS, but the claim gives no detail as to how it qualifies for priority, and the Debtor plans to review the claim with the IRS and object if needed.

**3.05    Security Deposit Claims**.  Any tenant of the Debtor for whom the Debtor holds a security deposit shall be refunded the security deposit at the time and on the terms set out in the Debtor's pre-petition agreements with said tenant.

**3.06    Professional Fee Claims**.  Unless otherwise ordered by the Bankruptcy Court, the Holders of Professional Fee Claims shall file their respective final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the Administrative Claim Bar Date. If granted by the Bankruptcy Court, such Claim shall be paid in full in such amount as is Allowed by the Bankruptcy Court on the date such Professional Fee Claim becomes an Allowed Professional Fee Claim, or as soon as reasonably practicable thereafter. The Debtor shall be responsible for and timely pay all Allowed Professional Fee Claims in full. The expected professional claim of Hayward PLLC is currently projected at $80,000 subject to offset of approximately $20,000 remaining in retainer.

**3.07    Post-Effective Date Fees and Expenses**.   Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtor or Reorganized Debtor shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Court, pay in Cash the reasonable, actual, and documented legal, professional, or other fees and expenses related to implementation of the Plan and consummation incurred on or after the Effective Date by the Professionals.  Upon the Effective Date, any requirement that

Exhibit A

Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor or Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

### ARTICLE IV - CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.01    Introduction**.  This Plan places all Claims and Equity Interests, except unclassified Claims provided for in Article 3, in the Classes listed below.  Unless otherwise stated, a Claim or Equity Interest is placed in a particular Class only to the extent that it falls within the description of that Class and is classified in any other Class to the extent that any portion thereof falls within the description of such other Class.

**4.02    Summary of Classification**.  In accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims and Equity Interests are placed in the Classes described below for all purposes, including voting on (if impaired), confirmation of, and distributions under, this Plan as follows:

| Class No. | Class Description | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Allowed Secured Claim of Travis County | Impaired | Entitled to Vote |
| Class 2 | Allowed Secured Claim of Creditor Caz Creek TX, LLC | Impaired | Entitled to Vote |
| Class 3 | Allowed Secured Claims of AC VIP PC Marina Debt, LLC ("**Noteholder**") | Impaired | Entitled to Vote |
| Class 4 | Allowed Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Allowed Equity Interests | Unimpaired | Not Entitled to Vote |

**4.03    Designation of Unimpaired and Impaired Classes**.  Classes 1, 2, 3, and 4 are Impaired and entitled to vote.

**4.04    Acceptance of the Plan**.  An Impaired Class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims or such Class that have accepted or rejected the Plan. Any Impaired Class of Creditors in which no member votes to accept or reject the Plan will be deemed to have accepted the Plan. The votes of Insiders to accept the Plan do not count in determining whether the Plan has been accepted by at least one class of Impaired Claims, a requirement under the Bankruptcy Code for Confirmation of the Plan.

15225971

Exhibit A

**4.05    Nonconsensual Confirmation**.  In the event any Impaired Class fails to accept the Plan, in accordance with section 1129(a) of the Bankruptcy Code, the Debtor, as the Plan proponent, reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

**4.06    Classification and Treatment of Claims and Equity Interests**.

**Class 1 – Allowed Secured Claim of Travis County**

The allowed secured claim of Travis County shall be paid in accordance with 11 U.S.C. § 1129(a)(9)(c). The Debtor, in its sole discretion, will either pay such Claims: (i) on the Effective Date; (ii) when such taxes become due and payable under the laws of the applicable taxing jurisdiction; or (iii) with quarterly deferred cash payments including applicable interest over a period not exceeding one year from the Effective Date, equal to the Allowed Claim.

All Tax Claims shall remain subject to section 505 of the Bankruptcy Code. The Reorganized Debtor shall retain the right to a determination of the amount or legality of any tax pursuant to section 505 of the Bankruptcy Code as to any Tax Claim. The Reorganized Debtor may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any Tax Claim.

With respect to Allowed Secured Tax Claims, the interest rate paid upon such Claims shall be the rate of interest determined under applicable non-bankruptcy law.

Post-petition property taxes will be paid when such taxes become due and payable under the laws of the applicable taxing jurisdiction.

Nothing herein shall prohibit the Debtor or the Reorganized Debtor from selling the Property at any time provided that the remaining unpaid portion of the Allowed Secured Claim of a Taxing Authority holding an interest in the Property shall be paid in full at such time.

Claims in Class 1 are impaired by the Plan.

**Class 2 – Secured Claim of Caz Creek Holdings 2, LLC.**

The Allowed Secured Claim of Caz Creek shall be Allowed in the amount of $ 77,396. The Allowed Secured Claim of Caz Creek shall be paid through monthly over 120 consecutive payments along with interest at a rate of 8% per annum.

The first monthly payment will be due and payable on the first Business Day of the first month after the Effective Date and on the first Business Day of each respective month thereafter. To the extent that the Debtor misses any payment due to Caz Creek on account of its Allowed Secured Claim as provided herein, Caz Creek shall send written notice of such missed payment to Debtor and its counsel, and the Debtor shall have ten (10) business days from the date of its receipt of such notice to make such missed payment before a default may be deemed to have occurred hereunder.

15225971

Any perfected liens or security interests securing Caz Creek's Allowed Secured Claim will be preserved and continued. Caz Creek shall, upon payment and satisfaction of its Allowed Secured Claim in full as provided herein, execute releases of any remaining encumbrances upon the Property in a form satisfactory to the Reorganized Debtor and deliver same to the Reorganized Debtor or its designee.

The written agreements by and between Caz Creek and the Debtor will remain the same, except to the extent that the terms therein are modified by this Plan, and such agreements will be deemed to be modified to comport with this Plan.

All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be deemed cured and waived, and all amounts owed will be deaccelerated and paid in accordance with the terms of this Plan. Except as provided by this Plan, no default interest, late charges, or other penalties arising or accruing after the Petition Date shall be required to be paid to Caz Creek, provided, however, that Caz Creek shall be entitled to charge, collect, and receive late charges and other amounts provided by the written agreements between the Debtor and Caz Creek in the event of the Debtor's failure to timely make a payment to Caz Creek on its Allowed Secured Claim under this Plan after Confirmation.

Nothing herein shall prohibit the Reorganized Debtor from refinancing, selling, or otherwise disposing of the Property at any time, provided that the remaining unpaid portion of Caz Creek's Allowed Secured Claim shall be paid in full at such time. No prepayment penalty will be due with respect to any prepayment of Caz Creek's Allowed Secured Claim.

Class 2 Claims are Impaired by the Plan.

### Class 3 – Allowed Secured Claims of Noteholder

AC's Allowed Secured Claim shall be paid in accordance with the terms set forth below. The treatment involves, (a) cash proceeds from leasing and operations and (b) cash proceeds from sale of the Property or Refinancing.  Notwithstanding anything to the contrary herein, AC shall have an Allowed Secured Claim in the amount of $4,783,891.00 ("New Principal Balance"), and the Debtor hereby waives the right to contest the amount of the claim, the extent, priority and validity of AC's liens, or to bring claims and causes of action first arising prior to the Petition Date related to the Note.[1]

a. **Cash Payments From Proceeds of Leasing**

Beginning on the fifth (5th) day of the first month after the Effective Date, provided that if the if the 5th day of the month falls on a weekend or legal holiday, the next business day, Debtor

---

[1] The agreed amount of AC's Allowed Secured Claim assumes an Effective Date of March 31, 2024.  If the Effective Date of the Plan is later than March 31, 2024, AC and the Debtor agree to increase the amount of the Allowed Secured Claim to account for the continued accrual of interest, fees and charges under the Note and other Loan Documents, provided that the New Principal Balance will be trued-up to account for AC VIP's actual legal fees as of the Effective Date, and further provided that the Debtor reserves the right to object to the combined amount of AC VIP's February 2024 and March 2024 legal fees, but only if they exceed $50,000.00 in the aggregate.

15225971

will pay to AC monthly payments in the amount of $47,839.00[2] and reflects an agreed interest rate of 12%. These payments will cover regular interest between the Effective Date and the Maturity Date. All remaining principal, interest, and costs will be due and payable on the tenth (10th) day of the month following one year from the effective date of the Plan ("Maturity Date"). Additionally, the ad valorem taxes accruing in 2024 and becoming due and payable on January 31, 2025, will be paid timely by the Debtor or its affiliate, which payment will not prime the lien of AC.

> **b.** **Cash from Proceeds of Refinancing or Sale**

The remainder of the Secured Claim of AC after application of the payments made above will be paid from cash proceeds from the Refinancing or sale of all or a portion of the Property on or before the Maturity Date.

Debtor may, consistent with section 1123(a)(5)(D) of the Bankruptcy Code, market and sell any or all of the Property.  In the event of such a sale, AC will receive the amount of net proceeds from the sale of all or a portion of the Property after payment of customary closing costs (including broker's fees, title insurance fees, and other typical closing costs and taxes attributable to the Property) necessary to satisfy the remaining balance of the Loan in full.

Reorganized Debtor shall be entitled to close the sale of the Property and AC shall be required to timely cooperate with releasing its lien provided that sale provides for the payment of AC's allowed claim in in full as agreed to herein, including providing customary releases and other documentation to title as necessary to facilitate such closing and payoff.

AC may be paid in whole or in part at any time without penalty from the proceeds of the Sale or from any Refinancing obtained by or on behalf of the Debtor or the Reorganized Debtor.

Notwithstanding the same, the Reorganized Debtor reserves all rights to contest the validity of any default declared by AC, and the Bankruptcy Court shall retain jurisdiction to hear such disputes.

Notwithstanding any other provision in the Plan, the Debtors may seek, and the Court may, in its discretion, grant an extension of any Payment deadline, upon a showing of cause, including a force majeure or delays in the approval or permitting process by governmental authorities, notwithstanding the exercise of best efforts by the Debtor and the Buyer to timely close a sale or Refinance.

> **c.** **Provisions Applicable to Treatment of Noteholder Claim including provisions that vary the terms of the Loan Documents.**

Except as modified herein, the Loan Documents, and all rights, obligations, and conditions contained therein, shall remain in full force and effect from and after the Effective Date.

> 1.  Reporting

---

[2] Such amount is subject to the same adjustment as the New Principal Balance.

16

15225971

Exhibit A

On or before the tenth (10th) day of each month following the Effective Date, the Debtor will provide Noteholder standard reporting, including: (1) all official communications to and from LCRA including any inspection reports and memoranda; (2) monthly bank statements of the Debtor's operating account from the preceding month; and (3) evidence of current insurance and insurance claims that were filed in the preceding 30 days and any notice of cancellation of insurance.  On or before the Effective Date and on or before the tenth (10th) day of the beginning of each calendar quarter thereafter, the Debtor will provide Noteholder with (4) quarterly P&L statements, occupancy reports, rent rolls, and balance sheets for the Debtor. The Debtor shall provide to Noteholder a copy of any insurance renewal letters it receives from its insurers at least ten (10) Business Days in advance of the expiration of the Debtor's insurance policies.

    2.   Modifications to the Loan Documents

The following modifications to the Loan Documents shall be effective as of the Effective Date:

    (i)     The following shall replace Section 7.1(b) of the Loan Agreement, Section 22.2 of the Deed of Trust and any equivalent provisions in the Guarantees:

Upon a default on any Obligation or upon any failure on the part of Borrower to strictly comply with and Perform any term, provision, covenant, or condition contained in the Loan Agreement or Deed of Trust, as applicable, that is not an obligation to pay money to Lender, or otherwise covered under another section of Section 7.1 of the Loan Agreement or Section 22 of the Deed of Trust, as applicable, and such default or failure continues for the Non-Monetary Default Cure Period (as defined in the Amended Plan of Reorganization dated as of February [26], 2024, as filed in *In re WC Paradise Cove Marina, L.P.*, Case No. 23-10731-CGB, in the United States Bankruptcy Court Western District of Texas, Austin Division, as the same may be amended, modified, supplemented or restated from time to time (the "Plan")).

    (ii)    The following shall be added at the end of Section 7.3 of the Loan Agreement and Section 23 of the Deed of Trust, as applicable:

Notwithstanding anything to the contrary contained in the Loan Documents, the following Events of Default (collectively, the "Monetary Defaults") shall be subject to cure by the Borrower, the Grantor or any co-maker or Guarantor, as applicable, during the Monetary Default Cure Period: (i) Section 7.1(a) of the Loan Agreement, as may be modified by the Plan (as defined below); (ii) the failure to timely pay all taxes, assessments (whether general or special) and other governmental charges when due, as required by Section 12 of the Deed of Trust, including, for the avoidance of doubt, payments, fees, assessments and charges due and owing to the LCRA; (iii) Section 7.1(l) of the Loan Agreement, as may be modified by the Plan; and (iv) the failure to timely pay all insurance premiums related to the Property. Notwithstanding anything to the contrary contained in the Loan Documents, each other Event of Default or failure by the Borrower, the Grantor or any co-maker or Guarantor, as applicable, to observe or perform any other term, covenant or

15225971

Exhibit A

agreement contained in the Loan Documents, as may be modified by the Plan, or contained in the Plan (collectively, the "Non-Monetary Defaults") shall be subject to cure by the Borrower or the Grantor, as applicable, during the Non-Monetary Default Cure Period.  Capitalized terms used and not defined herein have the meanings ascribed to such terms in the Debtor's Amended Plan of Reorganization dated as of February [26], 2024, as filed in *In re WC Paradise Cove Marina, L.P.*, Case No. 23-10731-CGB, in the United States Bankruptcy Court Western District of Texas, Austin Division, as the same may be amended, modified, supplemented or restated from time to time (the "Plan").  If a Monetary Default or Non-Monetary Default has not been cured by the expiration of the Monetary Default Cure Period or the Non-Monetary Default Cure Period, as applicable, Noteholder shall be entitled to pursue all available remedies under applicable law and the Loan Documents, as may be modified herein.

(iii)   The representations and warranties or covenants, as applicable, contained in Sections 5.4, 5.7, 5.8 and 6.1.16 in the Loan Agreement shall be removed from the Loan Agreement.

(iv)   Section 9.1 of the Loan Agreement and Section 33 of the Deed of Trust shall be replaced with the following:

All notices required or permitted to be given hereunder, as modified by the Plan, must be in writing (including by electronic writing) to be effective and shall be deemed to have been given ( (a) if by Federal Express or other nationally recognized overnight courier, on the first Business Day following its timely deposit with such courier service, delivery fees for next business day delivery prepaid, or (c) if by electronic mail, on the next Business Day after being sent (as recorded on the device from which the sender sent the email) unless the sender receives an automated message that the email has not been delivered.  Notices must be delivered both via overnight courier and electronic mail. Until changed by notice pursuant to this Agreement or Deed of Trust, as applicable, the address for each party is as follows:

Borrower's/Grantor's Notice Address:
WC Paradise Cove Marina, LP
Attn : Legal Department
814 Lavaca Street
Austin, TX 78701
email: legaldocs@world-class.com
email: npaul@world-class.com

with a copy to:

Hayward PLLC
7600 Burnet Road, STE. 530
Austin, Texas 78757
Attention:  Ron Satija

15225971

email: rsatija@haywardfirm.com

Lender's/Beneficiary's Notice Address:

AC VIP PC Marina Debt, LLC
c/o Bluff Creek Marina
1119 Marina Point Dr.
Strawn, Texas 76475
Attention: Austin Cameron / Jenny Cameron
Email: pcdebt@vipmarinas.com

with a copy to:

Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Attention: Brian G. Rose / Eric M. English
email: brose@porterhedges.com / eenglish@porterhedges.com

(v)     Section 6.1.3 of the Loan Agreement shall be replaced with:

6.1.3   Insurance.     Borrower shall maintain in effect such insurance in such amounts, with such deductibles and covering such risks as is comparable to the existing in place coverage as of November 20, 2023; the current policies are attached hereto as Exhibit B.

(vi)    Section 7.1(c) of the Loan Agreement shall be removed from the Loan Agreement.

(vii)   Section 7.1(d) and (e) of the Loan Agreement shall be modified as follows such that a Guarantor's insolvency, bankruptcy, receivership, assignment for the benefit of creditors or similar status or proceeding will not trigger an event of default under Section 7.1(d) or (e) of the Loan Agreement:

d.      Immediately upon (i) the filing by Borrower or any endorser of the Note (or the filing against Borrower or such endorser to which Borrower or such endorser acquiesces or which is not dismissed within sixty (60) days after the filing thereof) of any proceeding under federal or state bankruptcy, insolvency or receivership laws now or hereafter existing or any other similar statute now or hereafter in effect; (ii) the entry of an order for relief under such laws with respect to Borrower or any endorser of the Note, or (iii) the appointment of a receiver, trustee, custodian or conservator of all or any part of the assets of Borrower or any endorser of the Note;

e.      Immediately upon (i) the insolvency of Borrower or any endorser of the Note; (ii) the execution by Borrower or any such endorser of an assignment for the benefit of creditors; (iii) the convening by Borrower or any such endorser

Exhibit A

of a meeting of its creditors, or any class thereof, for purposes of effecting a moratorium upon or extension or composition of its debts; (iv) the failure of Borrower or any such endorser to pay its debts as they mature; or (v) Borrower or any such endorser generally not paying its debts as they mature;

(viii) Sections 3.3 and 3.7 shall be removed from the Guaranties.

(ix) The following shall be added to Section 7.1(l) of the Loan Agreement after the phrase "Deed of Trust":

and/or the failure of Borrower to provide Lender with a copy of any insurance renewal letters it receives from insurers at least ten (10) Business Days in advance of the expiration of Borrower's insurance policies;

(x) The phrase "or guarantor" shall be removed from Sections 22.3 and 22.5 of the Deed of Trust.

(xi) Section 22.8 of the Deed of Trust shall be modified to say: "If any statement or representation in any financial statements or other materials furnished to Beneficiary after the Petition Date are discovered to have been false or incorrect or incomplete in any material respect;".

(xii) The filing of this Chapter 11 Case shall not constitute an event of default or trigger Noteholder's demand rights with respect to the Guarantors under the Loan Documents after the Effective Date.

(xiii) The reporting requirements in Sections 4.1(h) and (i) of the Natin Paul Guaranty and the Crestone Guaranty are waived through the Maturity Date.


To the extent of any dispute between the Debtor, a Guarantor, and/or Noteholder related to AC's Allowed Claim(s), such dispute may only be adjudicated and determined in this Bankruptcy Court, and the Bankruptcy Court shall retain jurisdiction related to such dispute.

This Claimant shall retain all valid Liens until its Allowed Claim(s) are paid in full.

This Class is Impaired.

### Class 4 – Allowed Unsecured Claims.


Class 4 consists of all Unsecured Claims that are not Insider Claims.

Each Allowed Unsecured Claim shall be paid in full within one year after the effective date at 8.5% interest, with payments to be made at the discretion of the debtor, and in no case any later than March 1, 2025.

15225971

This Class is Impaired.

**Class 5 – Equity Interests**.

Each holder of an Equity Interest shall retain such interests but shall not receive any distribution on account of such interests until Classes 1, 2, 3 and 4 Allowed Claims are paid in full.

This Class is Unimpaired and holders of Claims in this Class are not entitled to accept or reject the Plan.

## ARTICLE V - IMPLEMENTATION OF PLAN

**5.01    Reorganized Debtor**.  From and after the Effective Date, Debtor will exist as the Reorganized Debtor.  Except as otherwise provided in the Plan, the Reorganized Debtor will remain in possession and ownership of all of the assets of Debtor and shall operate them in its best business judgment without further oversight of the Bankruptcy Court.

**5.02    Vesting of Assets**.  Except as otherwise provided in the Plan, all Property of the Estate will vest in the Reorganized Debtor, subject only to (1) the Liens provided for in the Plan including the lien of Noteholder until its Allowed Claims are paid in full; and (2) the obligations of the Reorganized Debtor as set forth in the Plan and Confirmation Order. From and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire and dispose of property without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to the terms and conditions of this Plan.

**5.03    Vesting and Enforcement of Causes of Action**. Any and all claims and causes of action shall vest in the Reorganized Debtor on the Effective Date, and the Reorganized Debtor shall be the only Entity entitled to pursue such claims or causes of action.

**5.04    Preservation of Causes of Action**. In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, including but not limited to Avoidance Actions, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action against it. The Debtor or the Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article include any claim or Cause of Action with respect to, or against, a Released Party.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that the Debtor may hold against any Entity shall vest in

15225971

the Reorganized Debtor. The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.

**5.05    The Reorganized Debtor's Obligations Under the Plan**.  The Reorganized Debtor shall perform all of the obligations under the Plan, including obligations to pay or otherwise satisfy the Allowed Claims. All Cash necessary for the Reorganized Debtor to make payments pursuant to the Plan shall be obtained from rental receipts, proceeds of refinance, proceeds of a sale, or from Court approved financing, including from an affiliate of the Debtor.

(a) From and after the Effective Date, the Reorganized Debtor shall, among other things:

(1)    administer the Plan and take all steps and execute all instruments and documents necessary to effectuate the Plan;

(2)    resolve Disputed Claims, and administer the Claims allowance and disallowance processes as set forth in the Plan, including, without limitation, objecting to, prosecuting, litigating, reconciling, settling and resolving Claims and Disputed Claims in accordance with the Plan;

(3)    make decisions regarding the retention, engagement, payment and replacement of professionals, employees and consultants;

(4)    administer the Distributions under the Plan, including (i) making Distributions in accordance with the terms of the Plan and (ii) establishing and maintaining the various reserves;

(5)    exercise such other powers as necessary or prudent to carry out the provisions of the Plan;

(6)    file appropriate tax returns; and

(7)    take such other actions as may be necessary or appropriate to effectuate this Plan.

b)    Following the Effective Date the Reorganized Debtor may pay its post-Effective Date operating expenses in the ordinary course of its business without further notice or orders of this Court.

**5.06    Exemption from Transfer Taxes**.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan or the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan, including without express or implied limitation, any transfers to or by the Reorganized Debtor, shall not be subject to any transfer, sales, stamp or other similar tax, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to

15225971

forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the forgoing instruments or other documents without the payment of any such tax or governmental assessment.

## ARTICLE VI - TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.01    Assumption or Rejection of Executory Contracts and Unexpired Leases.**  On the Effective Date, except as otherwise provided in the Plan, any unexpired lease or executory contract that has not been previously assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court shall be deemed assumed by the Debtor under sections 365(a) and 1123 of the Bankruptcy Code. Debtor will file a Plan Supplement including a list of contracts to be rejected prior to date of the Confirmation Hearing.  Entry of the Confirmation Order shall constitute approval of such assumptions or rejections, as the case may be, (as such lists may be amended, supplemented or modified on or before the Confirmation Date), pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Any motions to assume executory contracts and unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

**6.02    Objections to Assumption of Executory Contracts and Unexpired Leases**.  To the extent that any party to an Executory Contract or unexpired lease identified for assumption, or any other party in interest, (a) asserts arrearages or damages pursuant to section 365(b)(1) of the Bankruptcy Code in an amount different from the amount, if any, set forth in the Schedules or otherwise asserted by the Debtor, (b) has any objection to the proposed adequate assurance of future performance, if required, or (c) has any other objection to the proposed assumption, cure, or assignment of a particular Executory Contract or unexpired lease on the terms and conditions provided for herein, all such asserted arrearages and any other objections shall be filed and served within the same deadline and in the same manner established for filing objections to the Plan.

Failure to assert any arrearages different from the amount set forth in the Schedules (or the exhibits thereto) or otherwise asserted by the Debtor, or to file an objection within the time period set forth above, shall constitute consent to the assumption, cure, and assignment on the terms provided for herein, including acknowledgment that (a) the Debtor (or its assignee(s)) has provided adequate assurance of future performance, if required, (b) the amount identified for "cure," if any, is the amount necessary to compensate for any and all outstanding defaults or actual pecuniary loss under the Executory Contract or unexpired lease to be assumed, and (c) no other defaults exist under such Executory Contract or unexpired lease.

If an objection to assumption and assignment is filed based upon lack of adequate assurance of future performance or otherwise, and the Court determines that the Debtor cannot assume the Executory Contract or unexpired lease either as proposed or as may be proposed pursuant to a modified proposal submitted by the Debtor, then the unexpired lease or Executory Contract shall automatically thereupon be deemed to have been rejected.

**6.03    Payments Related to Assumption of Executory Contracts and Unexpired Leases**.  Any monetary defaults, including claims for actual pecuniary loss, under each Executory

15225971

Contract and unexpired lease to be assumed under the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount, if any, as otherwise agreed by the parties or as ordered by the Bankruptcy Court, in Cash within 90 days following the Effective Date, or on such other terms as may be agreed to by the parties to such Executory Contract or unexpired lease.  In the event of a dispute regarding (a) the amount of any cure or pecuniary loss payment, (b) the ability of Reorganized Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, if required, or (c) any other matter pertaining to assumption, the cure or pecuniary loss payments required by section 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following entry of a Final Order resolving the dispute and approving assumption.

**6.04    Bar Date for Rejection Damages**.  If the rejection of an Executory Contract or unexpired lease pursuant to this Article gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is an Allowed Claim, shall be classified in Class 3; provided, however, that the Unsecured Claim arising from rejection shall be forever barred and shall not be enforceable against the Debtor, Reorganized Debtor, their successors or Property, unless a proof of Claim is Filed and served on the Reorganized Debtor within 30 days after the entry of an order of the Bankruptcy Court authorizing rejection of the Executory Contract or unexpired lease, which order may be the Confirmation Order.

**6.05    Insurance Policies**.    Notwithstanding anything contained in the Plan of Reorganization to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtor's insurance policies and any agreements, documents or instruments relating thereto, are treated as Executory Contracts under the Plan of Reorganization and will be assumed pursuant to the Plan of Reorganization, effective as of the Effective Date.

## ARTICLE VII - DETERMINATION OF CLAIMS

**7.01    Objections to Claims.**  Any party authorized by the Bankruptcy Code may object to the allowance of a pre-petition Claim at any time prior to the later of thirty (30) days after the Effective Date or thirty (30) days after such proof of claim is filed.  Any proof of claim filed after the Bar Date set by the Bankruptcy Court and applicable to such Claim shall be of no force and effect and shall be deemed disallowed.  All Contested Claims shall be litigated to Final Order; provided, however, that the Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court and further provided that if a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the applicable Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

**7.02    Undeliverable/Returned Distributions.**    Any Distribution to be made to a Creditor will be sent to that Creditor at (i) the address set forth on the proof of Claim filed for such Creditor, or (ii) if no proof of Claim is filed, at the address set forth on the Debtor's Schedules. In the event that a Distribution as herein provided is returned as undeliverable, or a Distribution is returned on account of there being no payment due to the affected Creditor, the Reorganized Debtor shall hold such Distribution for the affected Creditor for a period of 60 days following the Date of that Distribution for the benefit of the Creditor. If the affected Creditor does not make a

15225971

demand, in writing, for such unclaimed Distribution within the 60-day period, the Creditor shall forfeit all entitlement to the Distribution, and the Distribution shall revert to the Reorganized Debtor.

**7.03    Additional Charges.**  Except as may be expressly provided in the Plan or allowed by Final Order of the Bankruptcy Court, no interest, penalty, attorney's fee or late charge shall be allowed or paid with respect to any Claim.

### ARTICLE VIII - CONDITIONS PRECEDENT

**8.01    Conditions to Confirmation**.    The following are conditions precedent to confirmation of this Plan, each of which must be satisfied or waived by the Debtor:

(a)    **Form of Confirmation Order**.  The Bankruptcy Court enters the Confirmation Order in form and substance reasonably acceptable to the Debtor.

(b)    **Form of Documents**.    The Plan, the Plan Supplement and all schedules, documents, supplements and exhibits relating to this Plan shall have been filed in form and substance acceptable to the Debtor and the Court.

(c)    **Substance of Confirmation Order**.    The Confirmation Order contains the following:

(1)    the provisions of the Confirmation Order are nonseverable and mutually dependent;

(2)    approval of the assumption, rejection, or assumption and assignment of the specified Executory Contracts and unexpired leases;

(3)    all Executory Contracts or unexpired leases assumed and assigned by the Debtor during this Chapter 11 Case or under this Plan remain in full force and effect for the benefit of the Reorganized Debtor or any assignees of such contracts or leases, as the case may be, notwithstanding any provision in any such contract or lease (including those described in section 365(b)(2) and (f) of the Bankruptcy Code) that prohibits or conditions such assignment or transfer or that enables, permits, or requires termination of such contract or lease;

(4)    approval of all documents included in the Plan Supplement (if any);

(5)    the Reorganized Debtor is released and discharged from all obligations arising under all Executory Contracts and unexpired leases rejected by the Debtor during this Chapter 11 Case or under this Plan;

(6)    except as otherwise provided in the Plan, the Reorganized Debtor is discharged in accordance with Section 10.03 of this Plan; and

     (7)     retention of jurisdiction of the Bankruptcy Court to the fullest extent permissible by applicable law, and at least to the extent contemplated by Article VIII of this Plan.

**8.02   Conditions to Effectiveness**.  The following are conditions precedent to the occurrence of the Effective Date; provided, however, the Debtor may waive one or more of such conditions whereupon the Effective Date shall occur without further action by any Person:

     (a)     the Confirmation Date occurs;

     (b)     all documents necessary to effectuate the Plan as contained in the Plan Supplement shall have been executed and delivered (or approved by the Court), and all conditions precedent thereto shall have been satisfied (other than the occurrence of the Effective Date);

     (c)     all authorizations and/or consents required, if any, in connection with the consummation of this Plan shall have been obtained; and

     (d)     the Confirmation Order is not stayed pursuant to an order issued by a court of competent jurisdiction.

**8.03   Waiver of Conditions**.  The Debtor may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of this Plan.

### ARTICLE IX - JURISDICTION OF THE COURT

**9.01   General Retention of Jurisdiction.**  Until this Chapter 11 Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction permissible, including, without limitation, that necessary (a) to ensure that the purposes and intent of the Plan are carried out, (b) to enforce and interpret the terms and conditions of the Plan, and (c) to enter such orders or judgments including, without limitation, injunctions necessary to enforce the rights, title, and powers of the Debtor and/or the Reorganized Debtor.  Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Equity Interests in the Debtor and to adjudicate and enforce all other causes of action that may exist on behalf of the Debtor.  Nothing contained herein shall prevent the Reorganized Debtor from taking such action as may be necessary in the enforcement of any cause of action that each has or may have and that may not have been enforced or prosecuted by the Debtor, which cause of action shall survive entry of the Confirmation Order and occurrence of the Effective Date and shall not be affected thereby except as specifically provided herein.

**9.02   Specific Purposes**.  Without limiting the effect of Section 9.01, the Bankruptcy Court shall retain jurisdiction after Confirmation to:

     (a)     modify the Plan after entry of the Confirmation Order, pursuant to the provisions of the Plan, the Bankruptcy Code, and the Bankruptcy Rules;

15225971

(b) correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to the Plan, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(c) hear and determine any cause of action, and to enter and implement such orders as may be necessary or appropriate, to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

(d) hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan, and to enforce, including by specific performance, the provisions of the Plan;

(e) hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the settlement agreements or other agreements entered into by the Debtor during this Case.

(f) enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, transfers of property or property rights, or other obligations contained in the Plan and the Confirmation Order;

(g) assure the performance by Reorganized Debtor of its obligations to make distributions under the Plan;

(h) enter such orders or judgments, including injunctions, as necessary to enforce the title, rights, and powers of the Debtor, Reorganized Debtor, or the Plan;

(i) hear and determine any and all adversary proceedings, applications, and contested matters, including any remands after appeal;

(j) ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

(k) hear and determine any timely objections to or motions or applications concerning Claims or the allowance, classification, priority, compromise, setoff, estimation, or payment of any Claim, to the fullest extent permitted by the provisions of section 157 of title 28 of the United States Code;

(l) enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(m) hear and determine any motions, contested matters or adversary proceedings involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor and/or Reorganized Debtor arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Case;

15225971

(n)    hear and determine all applications for the employment or compensation of Professionals and reimbursement of expenses pursuant to sections 330, 331, or 503(b) of the Bankruptcy Code or the Plan;

(o)    recover all assets of the Debtor and Property of the Estate wherever located, including actions under chapter 5 of the Bankruptcy Code;

(p)    hear and determine any and all motions pending as of the Confirmation Date for the rejection, assumption, or assignment of Executory Contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(q)    hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(r)    consider and act on the compromise and settlement of any Claim against, or Equity Interest in, the Debtor, including, without limitation, any disputes relating to any Administrative Claims or any Bar Date;

(s)    hear and determine all questions and disputes regarding title to the assets of the Debtor or its Estate;

(t)    To issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code; and the court may issue such orders in aid of consummation of the Plan pursuant to sections 105 and 1142 of the Bankruptcy Code, including orders to authorize the Debtor (or such other party as may be designated by the Bankruptcy Court) to deliver and execute, on behalf of the Noteholder, any documents evidencing the Restructured Loan or related agreements;

(u)    hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Case; and

(v)    enter such orders as are necessary to implement and enforce any injunctions provided for in the Plan and Confirmation Order.

## ARTICLE X - EFFECT OF CONFIRMATION

**10.01   General**.  On the Effective Date, the provisions of this Plan shall be binding on the Debtor, any person or entity acquiring property under the Plan, and any Creditor of the Debtor, whether or not such Creditor has accepted the Plan.

**10.02   Plan Injunction**.  Except as specifically set forth in the Plan, from and after the Confirmation Date, all holders of Claims against and Equity Interests in the Debtor are permanently restrained and enjoined (i) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim or Equity Interests against the Debtor or the Estate, (ii) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor or the Estate, (iii) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Estate, (iv) from

15225971

asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (v) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a Disputed Claim or Disputed Equity Interest may continue to prosecute its proof of Claim or Equity Interest in the Bankruptcy Court and all holders of Allowed Claims and Equity Interests shall be entitled to enforce their rights under the Plan.

**10.03   Discharge of Claims**.  Except as otherwise provided in the Plan, the rights afforded in the Plan and the payments and distributions to be made thereunder are in complete exchange for, and in full satisfaction and release of, all existing Claims, debts and obligations of any kind, nature, or description whatsoever of or against the Debtor or any of its assets or property to the fullest extent permitted pursuant to section 1141 of the Bankruptcy Code. Upon the Effective Date, and except as otherwise provided in the Plan, all existing Claims against the Debtor and the Reorganized Debtor shall be and shall be deemed to be discharged. Subject to the provisions of the Plan, all holders of Claims or Equity Interests shall be precluded from asserting against the Debtor, or any of its assets or property, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of Claim or proof of Equity Interest. Subject to the provisions of the Plan, upon the Effective Date, the Debtor shall be deemed discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim or Equity Interest based upon such obligation is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such debt is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the holder of a Claim or Equity Interest based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and the Reorganized Debtor. In accordance with section 524 of the Bankruptcy Code, the discharge provided for hereunder shall void any judgment against the Debtor to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against the Debtor or its Property to the extent it relates to a discharged Claim.

**10.04   Indemnification Obligations**.  Nothing in this Plan shall diminish or impair the enforceability of any obligation of the Debtor to indemnify, reimburse or limit the liability of any Person, including but not limited to any officer or director of the Debtor, or any agent, Professional or financial advisor, relating to any acts or omissions occurring subsequent to the Petition Date, and such obligations shall be assumed by the Reorganized Debtor.

**10.05   Payment to the United States Trustee**.  In accordance with section 1129(a)(12) of the Bankruptcy Code and 28 U.S.C. § 1930, the Reorganized Debtor shall on the Confirmation Date pay all fees then due to the United States Trustee.

**10.06   Post-Petition Reports and Payments to the United States Trustee**.  On the Confirmation Date, the Debtor shall be relieved of any further obligation to file monthly operating reports with the Bankruptcy Court. The Reorganized Debtor shall make all post-confirmation payments to the United States Trustee as may be required pursuant to 28 U.S.C. § 1930(a)(6) from available funds and shall provide to the United States Trustee such financial reports as the United

15225971

States Trustee may reasonably request, until such time as this Chapter 11 Case has been closed, converted, or dismissed.

**10.07   Retention of Claims and Interests**.   Post-petition, and pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, any and all claims or interests belonging to the Debtor or to the Debtor's Estate shall be prosecuted and enforced by the Reorganized Debtor.  This includes, but is not limited to, any and all claims or causes of action for avoidance, recovery or subordination pursuant to sections 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, and any and all claims against the Noteholder or parties acting in concert with the Noteholder, including the Noteholder Action.

**10.08   Setoffs**.   The Debtor may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against the holder of such Claim; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such holder. After the Effective Date, such right shall pass to the Reorganized Debtor.

### ARTICLE XI - NOTICES

**11.01   General.**   After the Confirmation Date, all notices required to be given under any provision of the Bankruptcy Code and/or the Bankruptcy Rules shall be sent by first class mail, postage prepaid, only to (a) the Reorganized Debtor; (b) the counsel representing the Reorganized Debtor; (c) the United States in accordance with Bankruptcy Rule 2002(j), (d) the United States Trustee; and (e) those persons specifically requesting, pursuant to written request filed with the Court after the Confirmation Date, that they be furnished with notices. Service of all notices, as provided herein, shall constitute full and complete service on all Creditors and parties-in-interest.

### ARTICLE XII - DEFAULT

**12.01 Default by Debtor**.   In the event of a default by the Reorganized Debtor under the Plan, Creditors may exercise any rights granted to them under documents executed to implement the Plan or any rights available to such Creditors under applicable non-bankruptcy law.   In the absence of documents executed to implement the Plan, it may be enforced as a contract. Notwithstanding any other provision, any Creditor that alleges a default shall give the Reorganized Debtor thirty (30) days' notice and an opportunity to cure before exercising any rights available upon default against the Debtor, the Reorganized Debtor, or the Guarantor.

### ARTICLE XIII - MISCELLANEOUS

**13.01   Amendment or Modification to Plan.**   This Plan may be amended or modified by the Debtor prior to the hearing on confirmation without notice or hearing and without an additional Disclosure Statement pursuant to section 1127(a) of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 3019. Post-confirmation amendments or modifications of the Plan may be allowed by the Court pursuant to section 1127(b) of the Bankruptcy Code if the proposed amendment or modification is offered before the Plan has been substantially consummated. The sole right to amend or modify the Plan at any time shall be reserved to the Debtor. A holder of a

15225971

Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

**13.02  Correction of Plan**.  After the Effective Date, only the Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies, in the Plan, or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan.

**13.03  Revocation of Plan**.  The Debtor reserves the right to revoke and withdraw this Plan prior to entry of the Confirmation Order.  If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then this Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver, an admission, or a release of any defenses or claims against the Debtor, its Estate, or any other person or to prejudice in any manner the rights, claims, or defenses of the Debtor in any further proceedings or litigation whatsoever, involving the Debtor, the Estate, and their respective successors or assigns, if any.

**13.04  Binding Effect**.  The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.  The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

**13.05  Notices** All notices, requests and demands to or upon the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, with a copy by mail, addressed as follows:

If to the Reorganized Debtor:

> Ron Satija
> HAYWARD PLLC
> 7600 Burnet Rd., Suite 530
> Austin, TX 78757
> (737) 881-7100 (Phone/Fax)
> rsatija@haywardfirm.com

**13.06  Final Allowance**.  Notwithstanding anything contained above, all distributions to Classes under this Plan will only be made after the creditors in said Classes have their Claims fully fixed and Allowed by the Court.  However, objections on Claims in one Class will not preclude distribution to creditors in other Classes where no disputes exist regarding Claims in the other Classes.

**13.07  Consummation**.  Upon commencement of all payments and all transactions contemplated by this Plan, the Plan shall be deemed fully consummated, and this case shall be

15225971

Exhibit A

closed. Until substantial consummation occurs, the Debtor may move for and be granted modifications of this Plan. Once full consummation is accomplished, an appropriate Order will be entered closing this Chapter 11 Case, and such Order closing the case shall be deemed a final decree. The order closing this Estate shall, among other things, provide that all jurisdiction of this Court will terminate, except such jurisdiction as is otherwise provided hereinabove (including any disputes that may arise between the Reorganized Debtor and the Noteholder), or except and unless the Reorganized Debtor requires reopening of this case to enforce any injunctions contained in the Order closing this case (or any similar beneficial orders).

**13.08  Disbursing Agent**.  The Reorganized Debtor shall act as disbursing agent under the Plan.

**13.09  Further Authorization**.  The Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

**13.10  Means of Cash Payment**.  Payments of Cash made pursuant to this Plan shall be made, at the option and sole discretion of the Debtor, by checks drawn on, or wire transfer from, a domestic bank selected by the Debtor.

**13.11  Plan Supplement.**  All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. All documents required to be filed with the Plan Supplement shall be filed with the Bankruptcy Court at least seven (7) days prior to the date of the commencement of the Confirmation Hearing. Thereafter, any Person may examine the Plan Supplement in the office of the Clerk of the Bankruptcy Court during normal court hours. Copies of the Plan Supplement may also be obtained without charge by contacting Ron Satija of Hayward PLLC at the address listed above.

**13.12  Severability of Plan Provisions**. If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, upon the request of the Debtor to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.13  Governing Law**.  Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas without giving effect to the principles of conflicts of law of such jurisdiction.

15225971

**13.14  Conflicts.**  In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

**13.15  Entire  Agreement**.    Except  as  otherwise  indicated,  the  Plan  and  the  Plan Supplement  supersede  all  previous  and  contemporaneous  negotiations,  promises,  covenants, agreements,  understandings,  and  representations  on  such  subjects,  all  of  which  have  become merged and integrated into the Plan.

Dated:  February 26, 2024.

**WC PARADISE COVE MARINA, LP**
Debtor

By:   */s/ Natin Paul*
By:  Natin Paul
Manager
WC Paradise Cove GP LLC,
General Partner of the Debtor

15225971

Exhibit A